SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Deborah Townsend v. Noah Pierre** (A-2-13) (072357)

**Argued October 21, 2014 -- Decided March 12, 2015**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court addresses the net opinion rule and the standard for summary judgment in the context of a negligence action.

On August 9, 2008, a fatal collision occurred at the intersection of Garfield Drive and Levitt Parkway in the Township of Willingboro (Township). A lot on that intersection (the Property) was owned by Garland Property Management, LLC (Garland) and leased to Sunset Family Dental, LLC (Sunset Family Dental). The tragic accident occurred when Noah Pierre (Pierre) was turning left onto Levitt Parkway. As Pierre approached the intersection, she stopped at a stop sign, pausing behind another stopped vehicle. Initially, shrubbery on the Property obstructed Pierre's view, but she "edged up" into the intersection, starting and stopping four times before attempting the left turn. Pierre testified repeatedly that when she made her final stop, the shrubbery no longer impeded her view. Pierre's testimony was corroborated by her passenger, who stated that Pierre's view of oncoming traffic was not impeded by the shrubbery when she made her turn. As Pierre turned, her vehicle collided with a motorcycle traveling in the left eastbound lane of Levitt Parkway. The motorcyclist died as a result of the collision.

Plaintiffs filed this action against several defendants, asserting claims pursuant to the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and the Survival Act, N.J.S.A. 2A:15-3. Plaintiffs alleged that Garland and Sunset Family Dental negligently maintained overgrown shrubbery on the Property, blocking the view of oncoming traffic. Plaintiffs also named the Township and County as defendants, alleging that they negligently designed the intersection, causing the view of motorists to be obstructed.

After substantial discovery, the trial court denied motions for summary judgment on the ground that plaintiffs had sought to serve an expert report. Plaintiffs subsequently served a report by Nicholas Bellizzi, P.E. (Bellizzi), which primarily focused on the alleged negligence of the Township and County, but also addressed the care allegedly owed by Garland and Sunset Family Dental, concluding that the shrubbery violated local ordinances. Bellizzi's report also addressed the critical issue, concluding that "[t]he restricted substandard and unsafe intersection sight distance was a significant contributing cause" of the accident. Bellizzi noted Pierre's testimony that she did not turn until she had a clear view of oncoming traffic, but opined that Pierre must have been mistaken.

Defendants ultimately filed motions to bar Bellizzi's report as a net opinion. The court granted the motions and granted renewed summary judgment motions filed by defendants. The court dismissed plaintiffs' claims against the Township and County based on the immunity afforded to them by the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, and, with regard to Garland and Sunset Family Dental, held that the shrubbery was "not a factor in this case" given Pierre's testimony and the absence of evidentiary support for a theory of causation.

Plaintiffs appealed, and, in a ruling that plaintiffs do not challenge, the Appellate Division affirmed the dismissal of plaintiffs' claims against the Township and the County. Townsend v. Pierre, 429 N.J. Super. 522, 532 (App. Div. 2013). The panel reversed, however, the grant of summary judgment in favor of Garland and Sunset Family Dental, holding that the expert's conclusion was sufficiently grounded in the record and that plaintiffs could elicit the expert's opinion disputing Pierre's testimony in the form of a hypothetical question at trial. This Court granted Garland and Sunset Family Dental's petition for certification. 215 N.J. 485 (2013).

**HELD**: Given the uncontradicted testimony that the driver's view was unimpeded by the shrubbery on defendants' property, the trial court properly barred the causation opinion of plaintiffs' expert and granted summary judgment. The opinion on the issue of causation was a net opinion that was directly contradicted by the factual evidence. The opinion

with regard to the duty of care owed by the property owner and lessee was properly substantiated and was therefore admissible under N.J.R.E. 702 and 703.

1. To sustain a cause of action for negligence, plaintiff must establish four elements, including that defendants' alleged negligence was a proximate cause of the collision and Townsend's death. Accordingly, a pivotal issue of fact is whether Pierre's view was obstructed by shrubbery when she turned left. The evidence on that question consists entirely of two excerpts from deposition testimony: Pierre's testimony that she moved her car forward into the intersection four times before turning, and that when she turned, her view was unobstructed by the shrubbery; and her passenger's testimony corroborating Pierre's recollection regarding her clear line of vision at the crucial moment. To rebut that factual record, plaintiffs relied entirely on a portion of Bellizzi's expert report addressing the issue of causation. In that setting, the trial court decided the two motions at the center of this appeal. (pp. 16-17)

2. The admission or exclusion of expert testimony is committed to the sound discretion of the trial court. When, as in this case, a trial court confronts an evidence determination precedent to ruling on a summary judgment motion, it must address the evidence decision first. Appellate review proceeds in the same sequence. (pp. 17-18).

3. When a trial court determines the admissibility of expert testimony, N.J.R.E. 702 and N.J.R.E. 703 frame its analysis. The net opinion rule is a corollary of N.J.R.E. 703 which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data. The rule requires that an expert "give the why and wherefore that supports the opinion, rather than a mere conclusion." Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (internal quotation marks and additional citation omitted). The rule does not mandate that an expert organize or support an opinion in a particular manner that opposing counsel deems preferable. The net opinion rule, however, mandates that experts be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable. By definition, unsubstantiated expert testimony cannot provide to the factfinder the benefit that N.J.R.E. 702 envisions: a qualified specialist's reliable analysis of an issue beyond the ken of the average juror. (pp. 18-21)

4. A party's burden of proof on an element of a claim may not be satisfied by an expert opinion that is unsupported by the factual record or by an expert's speculation that contradicts that record. Here, Bellizzi's testimony must be rejected as a net opinion to the extent that he speculated on the issue of causation. Had Bellizzi been proffered as an expert only as to defendants' duty of care, his opinion would have been admissible, subject to cross-examination. With respect to causation, however, Bellizzi's opinion diverged from the evidence, and, to reconcile his opinion with the testimony, he reconstituted the facts and asserted that Pierre's testimony about her accident was wrong. In this crucial respect, Bellizzi's proposed expert testimony is an inadmissible net opinion. (pp. 21-25)

5. Acknowledging that the "unconditional admission" of Bellizzi's opinion on causation would be improper, the Appellate Division reasoned that the opinion's shortcomings could be remedied by the use of hypothetical questions. Townsend, 429 N.J. Super. at 529. The Court disagrees. The hypothetical suggested by the Appellate Division -- in which the expert would be asked to assume that Pierre's account of the accident was mistaken -- not only lacks the requisite foundation in the facts, but is premised on a rejection of uncontroverted testimony. On this record, no hypothetical question could salvage the causation opinion proffered by Bellizzi. See N.J.R.E. 705. (pp. 25-27)

6. Having addressed the propriety of Bellizzi's opinion, the Court turns to review the trial court's grant of summary judgment. Although the issue of causation is ordinarily left to the factfinder, summary judgment may be granted dismissing the plaintiff's claim in the unusual setting in which no reasonable factfinder could find that the plaintiff has proven causation by a preponderance of the evidence. This case presents such a setting. No facts in the record support plaintiffs' contention that the shrubbery was a proximate cause of the fatal collision. The trial court properly granted summary judgment dismissing plaintiffs' claims against Garland and Sunset Family Dental. (pp. 27-30)

The judgment of the Appellate Division is **REVERSED** with respect to Garland and Sunset Family Dental, and the trial court's grant of summary judgment in favor of Garland and Sunset Family Dental is **REINSTATED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

DEBORAH F. TOWNSEND,
administratrix ad prosequendum of
the Estate of Alvin J. Townsend,
Jr.; ALVIN J. TOWNSEND, SR.,
administrator ad prosequendum of
the Estate of Alvin J. Townsend,
Jr.; and ALVIN J. TOWNSEND, JR.,
deceased,

     Plaintiffs-Respondents,

        v.

NOAH PIERRE an individual; JEAN
HILAIREMONT, an individual; THE
PRECISION DENTAL SPECIALIST, LLC;
LEONARD H. JUROS, an individual;
JANET L. JUROS, an individual;
TOWNSHIP OF WILLINGBORO; and BOARD
OF CHOSEN FREEHOLDERS OF THE
COUNTY OF BURLINGTON,

     Defendants,

        and

GARLAND PROPERTY MANAGEMENT, LLC;
and SUNSET FAMILY DENTAL, LLC,

     Defendants-Appellants.


        Argued October 21, 2014 – Decided March 12, 2015

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 429 N.J. Super. 522 (2013).

        Michael Dolich argued the cause for
        appellants (Bennett, Bricklin & Saltzburg,
        attorneys; Mr. Dolich and Nicholas A.
        Cummins, on the briefs).

Donald M. Stanzione argued the cause for respondents (Lombardi and Lombardi, attorneys).

Michael G. Donahue, III, argued the cause for amicus curiae New Jersey Association of Justice (Stark & Stark, attorneys).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we apply the net opinion rule and the standard for summary judgment to a negligence action arising from a fatal collision between an automobile and a motorcycle. The accident occurred as the driver of the automobile, Noah Pierre (Pierre), was turning left at an intersection controlled by a stop sign. Among the defendants named in plaintiffs' wrongful death and survival actions were the owner and lessee of a property located on a corner of the intersection where the accident occurred. Plaintiffs alleged that these defendants negligently maintained overgrown shrubbery on their property, blocking Pierre's view of oncoming traffic at the intersection.

The role of the defendants' shrubbery in the accident was the subject of discovery. Pierre testified that shrubbery on the property initially obscured her view when she was stopped at the stop sign at the intersection, but that she edged forward, starting and stopping four times until her view of oncoming traffic was unimpeded. A passenger in Pierre's vehicle corroborated Pierre's testimony that when she turned left, she

had an unobstructed view of approaching traffic. The record contains no testimony to the contrary. However, an engineering expert retained by plaintiffs opined that the overgrown shrubbery on the property next to the intersection was a proximate cause of the fatal collision. He acknowledged Pierre's testimony that she stopped four times before proceeding and that the shrubbery on the adjoining property did not obstruct her view, but contended that Pierre's account of the accident was mistaken.

The trial court granted defendants' motion to strike the expert's testimony as a net opinion lacking support in the record. The court then granted defendants' motion for summary judgment dismissing plaintiffs' claims against the property owner and lessee. The Appellate Division vacated the trial court's order barring the expert's report and reversed the grant of summary judgment, holding that the expert's conclusion was sufficiently grounded in the record and that plaintiffs could elicit the expert's opinion disputing Pierre's testimony in the form of a hypothetical question at trial.

Given the uncontradicted testimony of Pierre and her passenger that Pierre's view of oncoming traffic was unimpeded by the shrubbery on defendants' property when she made her left turn, we hold that the trial court properly barred the causation opinion of plaintiffs' expert and granted summary judgment. The

3

expert's opinion that the defendant property owner and defendant lessee both had a duty to maintain the landscaping on their property so that it did not obstruct the view of drivers was properly substantiated and was therefore admissible under N.J.R.E. 702 and 703.  However, his opinion on the issue of causation was a net opinion that was not only unsupported by the factual evidence, but directly contradicted that evidence.

Accordingly, we reverse the judgment of the Appellate Division.  We reinstate the trial court's order barring the expert testimony and its grant of summary judgment dismissing plaintiffs' claims against the owner and lessee of the property adjoining the intersection.

I.

The tragic accident that gave rise to this litigation occurred during the evening of August 9, 2008, at the intersection of Garfield Drive and Levitt Parkway in the Township of Willingboro (Township).[1]  Garfield Drive is a roadway that runs north to south and is maintained by the Township. Levitt Parkway is a roadway that runs east to west and is maintained by Burlington County (County).  A stop sign on Garfield Drive regulated northbound traffic approaching the

---

[1] Our summary of the facts is based on the limited record that the parties presented to the trial court in connection with defendants' motion to strike the plaintiff's expert report and motion for summary judgment.

4

intersection on Garfield Drive, but no traffic signal or stop sign controlled eastbound and westbound traffic on Levitt Parkway.

The lot designated as 77 Garland Lane (the Property), situated at the southwest corner of the intersection, was owned by defendant Garland Property Management, LLC (Garland) and leased to a dental practice, defendant Sunset Family Dental, LLC (Sunset Family Dental). Plaintiffs allege that overgrown shrubbery located on the northern border of the Property obscured the lateral view of northbound drivers stopped at the stop sign at the intersection of Garfield Drive and Levitt Parkway.

According to Pierre's deposition testimony given when she was a defendant in this case, Pierre was traveling northbound on Garfield Drive shortly before the accident. Pierre stated that she approached the intersection and stopped at the stop sign, initially pausing behind another stopped vehicle. She testified that rather than turn left onto Levitt Parkway from the location of the stop sign, she "edged up" into the intersection, starting and stopping four times before attempting the left turn. Pierre acknowledged that when she initially stopped at the stop sign, the shrubbery on the Property obstructed her view of eastbound vehicles on Levitt Parkway approaching the intersection. However, Pierre repeatedly stated that when she made her fourth

5

and final stop before turning left, the shrubbery no longer impeded her view of oncoming traffic. Pierre further recalled, "I looked to my right. I looked to my left. I didn't see anything. It was safe. So, I began to make my left turn onto Levitt."

Pierre's testimony regarding her view of oncoming traffic when she turned left on Levitt Parkway was corroborated by her front-seat passenger, Danielle Kirby. Kirby's testimony diverged from that of Pierre with respect to how many times Pierre stopped the car before turning left; Kirby stated that Pierre stopped only once, not four times. However, Kirby testified that Pierre looked to her left before turning on to Levitt Parkway, and that when Pierre made her turn, her view of oncoming traffic was not impeded by the shrubbery on the Property.

The driver of another car, Anna Nelson (Nelson), testified that when she drove up to the intersection, she observed Pierre's car to her left, and that Pierre's car was already beyond the "stop line." Nelson testified that Pierre's car was "at the stop sign with me and then proceeded to go ahead and make a left-hand turn."[2]

_____

[2] Although none of the parties to this appeal submitted the testimony of Kirby and Nelson to the trial court, plaintiffs represent that excerpts of the depositions of Kirby and Nelson were submitted as part of the summary judgment record by the

6

It is undisputed that immediately after Pierre commenced her left turn, her vehicle collided with Townsend's motorcycle, which was traveling in the left eastbound lane of Levitt Parkway. Townsend died as a result of the collision.

Plaintiffs, the Administratrix and Administrator of Townsend's Estate and Townsend in his individual capacity, filed this action in the Law Division. They asserted claims pursuant to the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and the Survival Act, N.J.S.A. 2A:15-3, against several defendants. Plaintiffs claimed that Pierre operated her vehicle in a negligent manner, and that Pierre's employer was vicariously liable for Pierre's negligence. They alleged that Garland, Sunset Family Dental, and the previous owners of the Property "failed to properly cut the overgrown vegetation and/or bushes presenting a hazardous and dangerous condition" for drivers, and that at the time of the accident, Pierre's view "was obstructed by the presence of the aforementioned overgrown vegetation" on the Property. Plaintiffs also named the Township and County as defendants. They alleged that those entities negligently

---

Township and County, neither of which remain defendants. Those excerpts may, therefore, be considered in this appeal. See R. 2:5-4(a). We do not consider other deposition testimony that was not presented to the trial court and that was submitted by the parties for the first time on appeal. Id.; Davis v. Devereux Found., 209 N.J. 269, 296 n.8 (2012) (citing R. 2:5-4; N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 278 (2007); State v. Golotta, 178 N.J. 205, 211-12 (2003)).

7

designed the intersection, causing the view of motorists to be obstructed by the "vegetation and/or bushes" on the Property.

Upon completing a substantial portion of discovery, Garland, Sunset Family Dental, the Township, and the County moved for summary judgment.[3]  The trial court denied defendants' motions without prejudice on the ground that plaintiffs had requested leave to serve an expert's report in support of their claims.

Plaintiffs subsequently served upon Garland, Sunset Family Dental, the Township and the County a report dated November 15, 2010, by Nicholas Bellizzi, P.E. (Bellizzi), a professional engineer.  Bellizzi recited in his report that he inspected the site of the accident and took measurements and photographs on November 22, 2009, approximately fifteen months after the accident.  Bellizzi stated that he relied on his site inspection, photographs that he took during his inspection, photographs that plaintiffs' representatives took ten days after the accident, the police report, deposition transcripts, witness statements, Township codes and related documents, and highway

_____

[3] On a date that is not specified in the record, plaintiffs settled their claims against Pierre.  Although it appears that plaintiffs' claims against Pierre's employer and the former owner of 77 Garland Lane were also resolved, the record does not reveal whether those claims were withdrawn, settled, or dismissed by court order.

design standards promulgated by the American Association of State Highway and Transportation Officials (AASHTO).

Bellizzi's analysis was premised on the assumption that the relevant location, for purposes of determining a driver's ability to see traffic on Levitt Parkway, was behind the stop sign on Garfield Drive. The primary focus of his report was the alleged negligence of the Township and County. Bellizzi opined that the Township and the County maintained the intersection of Garfield Drive and Levitt Parkway in an unsafe condition. The expert contended that both entities had actual and constructive notice that the "large shrubbery" in front of the Property created "a visual barrier and obstruction to the safe intersection sight distance at the intersection." He further opined that the stop sign at the intersection should have been situated further north "to a point where a northbound motorist on Garfield Drive would have had an adequate line of sight at the intersection by seeing past, i.e., to the west of, the subject shrubbery," and that a white stop bar could have been painted "at an appropriate location to provide motorists with adequate sight distance."

Bellizzi's report also addressed the duty of care allegedly owed by Garland and Sunset Family Dental. He concluded that the height of the shrubbery in front of 77 Garland Lane violated the Township's Traffic and Parking Code, Willingboro, N.J., Rev.

9

Gen. Ordinances § 13-11.1 (2003), re-adopted as Willingboro, N.J., Code § 356-42 (2013). That ordinance imposed upon property owners and tenants the obligation to ensure that "no brush, hedge, or other plant life" close to roads and intersections "shall be cut to a height of more than 2 1/2 feet where it shall be necessary and expedient, as determined by the director of public safety, for the preservation of public safety." Id.[4] Bellizzi also cited, but did not discuss, a portion of the Township's Property Maintenance Code, Willingboro, N.J., Rev. Gen. Ordinances §§ 21-1 to 21-13 (2003), re-adopted as Willingboro, N.J., Code §§ 272-4 to -16 (2013).

Bellizzi's report briefly addressed the critical issue in this appeal: whether Garland's and Sunset Family Dental's alleged breach of the Township's ordinances was a cause of the fatal collision. The expert asserted that "[t]he restricted substandard and unsafe intersection sight distance was a significant contributing cause" of the accident and Townsend's death. With respect to the conflict between his opinion and the evidence, Bellizzi offered only the following comment:

_____

[4] The Township's Traffic and Parking Code prescribes a procedure by which the Township Director of Public Safety notifies a property owner or tenant that "brush, hedge, or plant life" is overgrown, and the owner or tenant has ten days after notice of a violation to comply. Id. There is no evidence that prior to the accident that gave rise to this action, the Township ever notified Garland or Sunset Family Dental that the landscaping on the Property was overgrown.

10

> I am mindful of the testimony of Noah Pierre regarding her allegedly stopping four (4) times before proceeding. However, given her testimony that the bushes obstructed her view of eastbound traffic on Levitt Parkway, and given that she never saw the approaching motorcycle, I reasonably conclude that she did not have an unobstructed view of Levitt Parkway when she proceeded into the roadway.

Bellizzi thus opined that when Pierre testified that she did not turn left until she had proceeded to the point at which she had an unobstructed view of the eastbound traffic on Levitt Parkway, she must have been mistaken. The expert offered neither factual evidence nor expert analysis contradicting Pierre's recollection. Instead, Bellizzi discounted Pierre's testimony that she did not turn until she had a clear view of oncoming traffic, based on Pierre's statement that her view was impeded before she edged into the intersection.

Following plaintiffs' service of Bellizzi's report, the Township, the County, Garland, and Sunset Family Dental renewed their motions for summary judgment. Noting that no motion to strike the expert's testimony as a net opinion had been filed, the trial court denied the summary judgment motions without prejudice. All four defendants then filed motions to bar Bellizzi's expert report as a net opinion. No party requested that the trial court conduct an evidentiary hearing on the expert opinion pursuant to N.J.R.E. 104(a), and the court did not hold such a hearing.

11

The trial court granted the motion to strike Bellizzi's report. It held that an expert's opinion must be supported with facts in the record, that Bellizzi offered neither evidentiary support nor an engineering analysis to counter Pierre's testimony, and that the expert report therefore stated a net opinion. Pursuant to Rule 4:46-2, the trial court subsequently granted renewed summary judgment motions submitted by the Township, the County, Garland, and Sunset Family Dental. It dismissed plaintiffs' claims against the Township and County based on the immunity afforded to them by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Addressing the summary judgment motion filed by Garland and Sunset Family Dental, the trial court held that the shrubbery on the disputed property was "not a factor in this case" given Pierre's testimony and the absence of evidentiary support for a theory of causation.

Plaintiffs appealed the trial court's determination. In a ruling that plaintiffs do not challenge before this Court, an Appellate Division panel affirmed the trial court's dismissal of plaintiffs' claims against the Township and the County on TCA grounds. Townsend v. Pierre, 429 N.J. Super. 522, 532 (App. Div. 2013). The panel reversed, however, the grant of summary judgment in favor of Garland and Sunset Family Dental. Ibid. It held that the trial court had abused its discretion when it

12

determined that Bellizzi's report constituted a net opinion. Id. at 528.

Noting that "Bellizzi's opinion that the bushes proximately caused the accident depends on the believability of Pierre's statement that she had an unobstructed view," the panel acknowledged that "the unconditional admission of Bellizzi's opinions on causation would be inappropriate, given Pierre's deposition testimony and that of her passenger." Id. at 529. The panel reasoned, however, that through "the use of a hypothetical question, with a corresponding limiting instruction," plaintiffs could offer Bellizzi's opinions to counter Pierre's fact testimony. Ibid. It concluded that where there is a reasonable basis "to reject a credibility-based recollection of a fact witness," the expert could, in response to a hypothetical question, comment about "alternative factual possibilities" that are inconsistent with the testimony -- specifically, the possibility that "Pierre was unable to see clearly to her left as she made the turn." Id. at 531. Based on that reasoning, the panel reversed the grant of summary judgment in favor of Garland and Sunset Family Dental. Id. at 532.

We granted certification. Townsend v. Pierre, 215 N.J. 485 (2013).

II.

Garland and Sunset Family Dental contend that Bellizzi's proposed testimony regarding causation constitutes a net opinion. They argue that the standards supporting Bellizzi's opinion on the question of negligence do not buttress his opinion on the issue of causation, which, in their view, challenged Pierre's uncontroverted testimony and lacked foundation in either expert analysis or the facts of this case. Garland and Sunset Family Dental assert that an expert is not authorized to invent facts contravening the testimony of witnesses without supporting evidence. They argue that the trial court properly granted summary judgment dismissing plaintiffs' claims.

Plaintiffs counter that the Appellate Division properly reversed the trial court's grant of the motion to strike the expert report and the motion for summary judgment filed by Garland and Sunset Family Dental. They contend that a reasonable jury could reject Pierre's testimony that her view of oncoming traffic was unobstructed by the shrubbery on the Property when she turned left, because Pierre testified that before she entered the intersection, the shrubbery at 77 Garland Lane obscured her view, and because she did not see Townsend's motorcycle before the collision. Plaintiffs argue that Bellizzi's report was premised on objective standards, that it

14

was not a net opinion, and that it created a fact issue that should be resolved by a jury.

Amicus curiae New Jersey Association for Justice (NJAJ) argues that the Appellate Division correctly concluded that Bellizzi's opinion should be admitted by means of a hypothetical question. NJAJ contends that the issue of proximate cause should be submitted to a jury, rather than determined by the court in a summary judgment motion, in all but the extraordinary case. Raising an issue not asserted by the parties, NJAJ contends that the trial court should have conducted a hearing pursuant to N.J.R.E. 104(a) before striking Bellizzi's report as a net opinion.

### III.

### A.

We consider the trial court's net opinion and summary judgment determinations in light of the legal framework that governs plaintiffs' negligence claim and the factual evidence in the record that relates to that claim.

To sustain a cause of action for negligence, a plaintiff must establish four elements: "'(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008) (alterations omitted) (quoting Weinberg v. Dinger, 106 N.J. 469, 484 (1987)). A "plaintiff bears the burden of establishing

15

those elements 'by some competent proof.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citing Buckelew v. Grossbard, 87 N.J. 512, 525 (1981); Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953), aff'd o.b., 14 N.J. 526 (1954)). Proximate cause consists of "'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Conklin v. Hannoch Weisman, 145 N.J. 395, 418 (1996) (quoting Fernandez v. Baruch, 96 N.J. Super. 125, 140 (App. Div. 1967), rev'd on other grounds, 52 N.J. 127 (1968)); Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 322 (App. Div.), certif. denied, 146 N.J. 569 (1996).

Applied here, the proximate cause element of a negligence claim requires that plaintiffs do more than simply demonstrate that Garland and Sunset Family Dental owed a duty of care to Townsend, a motorcyclist traveling on the county road past their property, and that they breached that duty by maintaining shrubbery in an overgrown condition. Plaintiffs must also prove by a preponderance of the evidence that the defendants' alleged negligence was a proximate cause of the collision and Townsend's death.

Accordingly, the question whether Pierre's view was obstructed by the shrubbery when she turned left is a pivotal

16

issue of fact.  In the record that was submitted to the trial court, the evidence regarding that question consists entirely of two excerpts from deposition testimony:  Pierre's testimony that she moved her car forward into the intersection four times before turning, and that when she made her left turn, her view was unobstructed by the shrubbery; and Kirby's testimony corroborating Pierre's recollection regarding her clear line of vision at the crucial moment.  To rebut that factual record before the trial court, plaintiffs relied entirely on a portion of Bellizzi's expert report addressing the issue of causation.  In that setting, the trial court decided the two motions that we review in this appeal.

### B.

The admission or exclusion of expert testimony is committed to the sound discretion of the trial court.  State v. Berry, 140 N.J. 280, 293 (1995).  As a discovery determination, a trial court's grant or denial of a motion to strike expert testimony is entitled to deference on appellate review.  See Bender v. Adelson, 187 N.J. 411, 428 (2006); Carey v. Lovett, 132 N.J. 44, 64 (1993); Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div.), certif. denied, 185 N.J. 296 (2005).  As this Court has noted, "we apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard."  Pomerantz Paper Corp. v. New

Cmty. Corp., 207 N.J. 344, 371-72 (2011).  When, as in this case, a trial court is "confronted with an evidence determination precedent to ruling on a summary judgment motion," it "squarely must address the evidence decision first."  Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010).  Appellate review of the trial court's decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court.  Id. at 385.

When a trial court determines the admissibility of expert testimony, N.J.R.E. 702 and N.J.R.E. 703 frame its analysis. N.J.R.E. 702 imposes three core requirements for the admission of expert testimony:

> "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony."
>
> [Creanga v. Jardal, 185 N.J. 345 (2005) (quoting Kemp ex rel. Wright v. State, 174 N.J. 412, 424 (2002)).]

N.J.R.E. 703 addresses the foundation for expert testimony. It mandates that expert opinion be grounded in "'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which

18

is the type of data normally relied upon by experts.'" Polzo, supra, 196 N.J. at 583 (quoting State v. Townsend, 186 N.J. 473, 494 (2006)). The net opinion rule is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Ibid.[5] The rule requires that an expert "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Pomerantz Paper Corp., supra, 207 N.J. at 372); see also Buckelew, supra, 87 N.J. at 524 (explaining that "an expert's bare conclusion[], unsupported by factual evidence, is inadmissible").

The net opinion rule is not a standard of perfection. The rule does not mandate that an expert organize or support an

---

[5] When it decides a motion to strike an expert report, a trial court may conduct a hearing under N.J.R.E. 104(a). N.J.R.E. 104(a) prescribes a procedure by which a trial court may "assess the soundness of [an expert's] proffered methodology and the qualifications of the expert." Rubanick v. Witco Chem. Corp., 125 N.J. 421, 454 (1991). Such a hearing "allows the court to assess whether the expert's opinion is based on scientifically sound reasoning or unsubstantiated personal beliefs couched in scientific terminology." Kemp, supra, 174 N.J. at 427 (citing Landrigan v. Celotex Corp., 127 N.J. 404, 414 (1992)). We do not address the argument asserted by amicus curiae NJAJ that the trial court abused its discretion by failing to sua sponte order an N.J.R.E. 104(a) hearing before deciding the motion to strike the expert report, as that issue was not raised by any party. Nicholas v. Mynster, 213 N.J. 463, 477 n.13 (2013) (citing Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 48-49 (1982)).

19

opinion in a particular manner that opposing counsel deems preferable.  An expert's proposed testimony should not be excluded merely "'because it fails to account for some particular condition or fact which the adversary considers relevant.'"  Creanga, supra, 185 N.J. at 360 (quoting State v. Freeman, 223 N.J. Super. 92, 116 (App. Div. 1988), certif. denied, 114 N.J. 525 (1989)).  The expert's failure "to give weight to a factor thought important by an adverse party does not reduce his testimony to an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion."  Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002) (citing Freeman, supra, 223 N.J. Super. at 115-16).  Such omissions may be "a proper 'subject of exploration and cross-examination at a trial.'"  Ibid. (quoting Rubanick v. Witco Chem. Corp., 242 N.J. Super. 36, 55 (App. Div. 1990), modified on other grounds, 125 N.J. 421 (1991)); see also State v. Harvey, 151 N.J. 117, 277 (1997) ("'[A]n expert witness is always subject to searching cross-examination as to the basis of his opinion.'" (quoting State v. Martini, 131 N.J. 176, 264 (1993))).

The net opinion rule, however, mandates that experts "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable."  Landrigan, supra, 127

20

N.J. at 417. An expert's conclusion "'is excluded if it is "'based merely on unfounded speculation and unquantified possibilities.'" Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997) (quoting Vuocolo v. Diamond Shamrock Chem. Co., 240 N.J. Super. 289, 300 (App. Div.), certif. denied, 122 N.J. 333 (1990)), certif. denied, 154 N.J. 607 (1998). As the Appellate Division noted, when an expert speculates, "he ceases to be an aid to the trier of fact and becomes nothing more than an additional juror." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div.), certif. denied, 145 N.J. 374 (1996), overruled on other grounds, Jerista v. Murray, 185 N.J. 175 (2005). By definition, unsubstantiated expert testimony cannot provide to the factfinder the benefit that N.J.R.E. 702 envisions: a qualified specialist's reliable analysis of an issue "beyond the ken of the average juror." Polzo, supra, 196 N.J. at 582 (citations omitted); see N.J.R.E. 702. Given the weight that a jury may accord to expert testimony, a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record.

A party's burden of proof on an element of a claim may not be satisfied by an expert opinion that is unsupported by the factual record or by an expert's speculation that contradicts that record. In Polzo, supra, an expert witness opined that,

for purposes of the TCA, N.J.S.A. 59:4-3(b), the defendant had constructive notice of the depression or declivity on a roadway that it maintained. 196 N.J. at 581. Despite the absence of factual evidence as to when the depression or declivity had developed, the expert speculated that it "would have existed for a significant period of time [--] i.e. months if not years, based on the recorded changes," and opined that such a defect "would, or should, have been noticed by those responsible for the maintenance" of the road. Ibid. (alteration in original). This Court commented:

> On its face, [the expert]'s report appears to provide no explanation for any of his conclusions: it does not explain the basis for his conclusion that the depression/declivity "would have existed for a significant period of time;" it does not support, in any manner whatsoever, the statement that the depression/declivity existed "for months if not years;" and it does not cite to or otherwise explain the relied-upon "recorded changes."

> [Id. at 583 (alterations omitted).]

Although the defendant in Polzo had not moved to strike the expert report, this Court held that the expert had stated nothing more than a net opinion that was insufficient to sustain the plaintiff's burden of establishing that the public entity was on constructive notice for purposes of the TCA. Id. at 584 & n.5. The Court remanded to the trial court for consideration

22

of the constructive notice issue on the basis of other evidence. Id. at 586.

In Smith v. Estate of Kelly, 343 N.J. Super. 480, 497 (App. Div. 2001), the Appellate Division similarly precluded an expert's unfounded report as a net opinion. There, the plaintiff sought to toll the statute of limitations on her action against a parish and several individuals for failing to act on her report that her father had sexually abused her. Id. at 486. The plaintiff proffered the expert report of a priest, who opined that because of "religious duress," the plaintiff had felt compelled to "'remain silent, refrain from making any public accusations, remarks or complaints and above all, avoid any contact with civil authorities in search of justice.'" Id. at 497. The expert contended that by virtue of "religious duress," the plaintiff was unable to initiate her civil action until her father was convicted and imprisoned. Ibid. The Appellate Division affirmed the trial court's rejection of the report as a net opinion because the expert's comments contravened the evidence. Ibid. The panel noted that:

> [T]he facts in the record directly contradict [the priest]'s conclusion. Plaintiff did not remain silent, but spoke out to numerous individuals, including family members, friends, public officials and law enforcement authorities. She sought out and successfully obtained the assistance of civil authorities in prosecuting her father, and she played an active role in that prosecution. This she did

> more than three years before instituting this
> civil law suit.
>
> [_Ibid._]

Applied here, the principle set forth in _Polzo_ and _Smith_ warrants the rejection of Bellizzi's testimony as a net opinion to the extent that he speculated on the issue of causation. Bellizzi's qualifications to opine on issues within his expertise as an engineer are unchallenged. His opinions with respect to the duty of entities that design and maintain roadways to ensure that shrubbery does not impede the view of drivers, and of landowners to comply with ordinances in the maintenance of landscaping, are adequately supported by relevant standards. Had Bellizzi been proffered as an expert only to generally define the defendants' duty of care, his opinion would have been admissible, subject to the scrutiny of cross-examination at trial.

With respect to the issue of causation, however, Bellizzi's opinion diverged from the evidence. Bellizzi did not apply his engineering expertise to present empirical evidence undermining Pierre's undisputed and corroborated testimony that when she turned left, her view of traffic on Levitt Parkway was unimpeded. He took no measurements to demonstrate the line of vision of a driver located at the point at which Pierre recalled making her left turn. Indeed, his expert opinion does not

24

suggest that at the location identified by Pierre as the point at which she turned, the shrubbery was capable of blocking a driver's view of oncoming traffic.

Instead, the expert analyzed the impact of the shrubbery on the line of vision of a driver stopped behind the stop sign, explaining that defective placement of a stop sign and negligent property maintenance proximately caused the accident. In an attempt to reconcile his opinion with the testimony, Bellizzi reconstituted the facts. He asserted that Pierre's testimony about her accident was wrong. In this crucial respect, Bellizzi's proposed expert testimony is an inadmissible net opinion.

Acknowledging that the "unconditional admission" of Bellizzi's opinion on causation would be improper, the Appellate Division reasoned that the opinion's shortcomings could be remedied by the use of hypothetical questions. Townsend, supra, 429 N.J. Super. at 529. The Appellate Division envisioned that Bellizzi would be asked "to assume hypothetically that Pierre was unable to see clearly to her left as she made the turn." Id. at 530. We disagree with the Appellate Division that such a hypothetical question could convert Bellizzi's net opinion on the issue of causation into admissible expert testimony.

The use of hypothetical questions in the presentation of expert testimony is permitted by N.J.R.E. 705, "provided that

25

the questions include facts admitted or supported by the evidence." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 4 on N.J.R.E. 705 (2014) (citing Wilsey v. Reisinger, 76 N.J. Super. 20, 25 (App. Div.), certif. denied, 38 N.J. 610 (1962)). As this Court noted in Stanley Co. of America v. Hercules Powder Co., "[t]he opinions of experts must be based either upon facts within their own knowledge which they detail to the jury or upon hypothetical questions embracing facts supported by the evidence upon which the expert opinion is sought." 16 N.J. 295, 305 (1954) (citing Beam v. Kent, 3 N.J. 210, 215 (1949)); see also Savoia v. F. W. Woolworth Co., 88 N.J. Super. 153, 162 (App. Div. 1965). "Expert opinion is valueless unless it is rested upon the facts which are admitted or are proved." Stanley, supra, 16 N.J. at 305 (citing Bayonne v. Standard Oil Co., 81 N.J.L. 717, 722 (E. & A. 1910)); see also State v. Sowell, 213 N.J. 89, 100 (2013) (holding that hypothetical question in criminal case must be limited to facts presented at trial); accord State v. Nesbitt, 185 N.J. 504, 519 (2006); State v. Odom, 116 N.J. 65, 78-79 (1989). Consequently, "a hypothetical question cannot be invoked to supply the substantial facts necessary to support the conclusion." Stanley, supra, 16 N.J. at 305 (citations omitted); Wilsey, supra, 76 N.J. Super. at 25.

26

That principle governs this case. The hypothetical question suggested by the Appellate Division -- in which the expert would be asked to assume that Pierre's account of the accident was mistaken -- not only lacks the requisite foundation in the facts, but is premised on a rejection of uncontroverted testimony. On this record, no hypothetical question that conforms to our standard can salvage the causation opinion proffered by Bellizzi.

Accordingly, we hold that the trial court properly exercised its discretion when it rejected Bellizzi's causation testimony as a net opinion.

C.

In the wake of its exclusion of Bellizzi's opinion, the trial court granted summary judgment on the ground that plaintiffs had failed to present a prima facie showing of causation. That determination is reviewed de novo. Davis, supra, 219 N.J. at 405 (citing Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014)). We apply the same standard that governs the trial court, which requires denial of summary judgment when "'the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Id.

27

at 406 (quoting <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 540 (1995)).

The issue of causation is ordinarily left to the factfinder. <u>Fluehr v. City of Cape May</u>, 159 <u>N.J.</u> 532, 543 (1999) (citing <u>Scafidi v. Seiler</u>, 119 <u>N.J.</u> 93, 101 (1990)); <u>J.S. v. R.T.H.</u>, 155 <u>N.J.</u> 330, 351 (1998) (citing <u>Martin v. Bengue, Inc.</u>, 25 <u>N.J.</u> 359, 374 (1957)). That rule, however, is not absolute. As this Court has noted, the issue of proximate cause "may be removed from the factfinder in the highly extraordinary case in which reasonable minds could not differ on whether that issue has been established." <u>Fleuhr</u>, <u>supra</u>, 159 <u>N.J.</u> at 543 (citing <u>Vega by Muniz v. Piedilato</u>, 154 <u>N.J.</u> 496, 509 (1998)); <u>J.S.</u>, <u>supra</u>, 155 <u>N.J.</u> at 352 ("[O]ur courts have, as a matter of law, rejected the imposition of liability for highly extraordinary consequences."). For example, in <u>Fleuhr</u>, <u>supra</u>, this Court reinstated the grant of summary judgment in favor of a municipality because dangerous ocean conditions and a surfer's conduct, not the alleged negligence of a lifeguard, caused a surfing accident. 159 <u>N.J.</u> at 543-45; <u>see also</u> <u>Vega</u>, <u>supra</u>, 155 <u>N.J.</u> at 507-09 (holding summary judgment properly granted where no reasonable jury could find condition of property, with an open air shaft, and not plaintiff's "undisputed" attempt to leap air shaft, was proximate cause of injury); <u>Dawson</u>, <u>supra</u>, 289 <u>N.J. Super.</u> at 322-25 (holding summary judgment properly granted

28

where expert report was inadmissible "net opinion" on proximate cause between defendant's negligent handling of roof trusses and truss collapse). Thus, in the unusual setting in which no reasonable factfinder could find that the plaintiff has proven causation by a preponderance of the evidence, summary judgment may be granted dismissing the plaintiff's claim.

This case presents such a setting. As this Court has noted, to prove the element of causation, plaintiffs bear the burden to

> introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
>
> [Davidson v. Slater, 189 N.J. 166, 185 (2007) (quoting Reynolds v. Gonzalez, 172 N.J. 266 (2002)).]

Here, no facts in the record support plaintiffs' contention that the shrubbery on the Property was a proximate cause of the fatal collision between Pierre and Townsend. None of the three witnesses to the accident whose testimony was before the trial court suggested that the shrubbery impeded Pierre's view of oncoming traffic when she made her left turn. Against her interest as a defendant in this case, Pierre denied that the

29

shrubbery obscured her view, and Kirby corroborated Pierre's testimony.  No engineering analysis undermined Pierre's recollection of the accident.  Plaintiffs' contention that the fact of the accident itself provides circumstantial evidence that the shrubbery was a cause of the collision, because Pierre did not notice the approaching motorcycle before the impact, is nothing more than speculation.

There is, in short, no evidence in the record that would support a factfinder's determination in plaintiffs' favor on the crucial element of proximate cause.  The trial court properly granted summary judgment dismissing plaintiffs' claims against Garland and Sunset Family Dental.

IV.

The judgment of the Appellate Division is reversed with respect to Garland and Sunset Family Dental, and the trial court's grant of summary judgment in favor of Garland and Sunset Family Dental is reinstated.

CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, ALBIN, and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-2                                    SEPTEMBER TERM 2013

ON CERTIFICATION TO        Appellate Division, Superior Court

DEBORAH F. TOWNSEND,
Administratrix ad prosequendum of
the Estate of Alvin J. Townsend,
Jr.; ALVIN J. TOWNSEND, SR.,
administrator ad prosequendum of
the Estate of Alvin J. Townsend,
Jr.; and ALVIN J. TOWNSEND, JR.,
deceased,

        Plaintiffs-Respondents,

                v.

NOAH PIERRE an individual; JEAN
HILAIREMONT, an individual; THE
PRECISION DENTAL SPECIALIST, LLC;
LEONARD H. JUROS, an individual;
JANEL L. JUROS, an individual;
TOWNSHIP OF WILLINGBORO; and BOARD
OF CHOSEN FREEHOLDERS OF THE
COUNTY OF BURLINGTON,

        Defendants,

                and

GARLAND PROPERTY MANAGEMENT, LLC;
and SUNSET FAMILY DENTAL, LLC,

        Defendants-Appellants.

DECIDED                March 12, 2015
                Chief Justice Rabner                    PRESIDING
OPINION BY                Justice Patterson
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE/ REINSTATE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ----------------------- | --------------------- |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1