**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2716-17T2

LISA HATTRICH and JOHN
HATTRICH,

     Plaintiffs-Appellants,

v.

CLYDE NEIL and COUNTY OF
OCEAN,

     Defendants,

and

STATE OF NEW JERSEY,

     Defendant-Respondent.

_____

Argued November 28, 2018 – Decided December 17, 2018

Before Judges Nugent and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0462-15.

William D. Wright argued the cause for appellants (The Wright Law Firm, attorneys; William D. Wright, on the briefs.)

Christopher J. Riggs, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Christopher J. Riggs, on the brief).

PER CURIAM

This is an automobile negligence action. Plaintiffs, Lisa Hattrich and John Hattrich, appeal the summary judgment dismissal of their complaint against the State of New Jersey. Their complaint alleged, among other things, that a dangerous condition at a State-controlled intersection was a proximate cause of the vehicular accident in which Lisa Hattrich was injured. We conclude plaintiffs failed to establish a triable issue as to whether the dangerous condition alleged by them was a proximate cause of the accident. We thus affirm.

Plaintiffs commenced this action by filing a three-count complaint. In the first count, they alleged defendant, Clyde Neil, negligently disregarded a red traffic light in Barnegat at the intersection of Route 72 West and Barnegat Avenue, causing his vehicle to collide with Lisa Hattrich's vehicle. In the second count, they alleged the negligence of fictitious persons and entities contributed to the collision. In the third count, they alleged the State or the County of Ocean maintained a dangerous condition at the intersection, namely, a traffic light "designed in such a way that: a) The timing of the signals caused drivers to

2

proceed through a red signal; b) The signals themselves are difficult or impossible for passing drivers to see."

Plaintiffs amended the complaint to remove the County of Ocean as a defendant and settled their claim against Clyde Neil. The State moved for summary judgment three times. The court denied the first two motions without prejudice so that the parties could further investigate matters affecting the State's claim of plan or design immunity. The third time, the trial court granted the motion.

The motion record establishes that in the early afternoon of April 29, 2014, a Ford Fusion driven by plaintiff Lisa Hattrich and a Nissan Altima driven by defendant Clyde Neil collided in the intersection of Barnegat Avenue and State Highway Route 72 West in Ship Bottom. Barnegat Avenue is a north-south four-lane highway, two lanes in each direction. The speed limit is twenty-five miles per hour. Route 72 West has two westbound lanes. The speed limit is forty miles per hour. Neither the weather nor the road conditions were contributing factors to the accident. Traffic lights controlled traffic flow through the intersection. Before the cars collided in the intersection, Lisa Hattrich had been driving north on Barnegat Avenue, and Clyde Neil had been driving west on Route 72.

A-2716-17T2

When deposed, Lisa Hattrich said she stopped her Ford Fusion in the right, outside northbound lane of Barnegat Avenue because the traffic light for northbound Barnegat Avenue was red. She was the first vehicle stopped in that lane for the red light. After waiting for "[a] minute, two minutes maybe[,] [n]ot very long[,]" the light turned green. As soon as the light turned green, she "went, and before [she] knew it . . . [she] was in the oncoming lane across the intersection and some woman was opening [her] door and helping [her] out of the car." Clyde Neil's car had collided with Lisa Hattrich's Fusion and the force of the impact had propelled the Fusion into the oncoming traffic lanes.

Before the parties exchanged discovery, Clyde Neil died of causes unrelated to the accident. His interrogatory answers included the following written statement he made to his insurance company on May 2, 2014, three days after the accident: "I drove through intersection w[hen the] light turned yellow other car hit me, she was going N on Barnegat Avenue." Based on that statement, the State included the following paragraph in the statement of undisputed material facts it submitted in support of its summary judgment motion:

> Clyde Neil passed away from conditions that were unrelated to the accident. He was not deposed, and there is absolutely no evidence that he had

> difficulty seeing the traffic signal at the intersection of Route 72 West and Barnegat Avenue.

Plaintiffs responded:

> Denied. The fact that defendant Neil failed to obey the traffic signal as set forth in the police report is evidence that he did not see it. Likewise, plaintiff's expert provides a detailed analysis of why drivers in Neil's position frequently failed to observe the signal.
> . . .

Plaintiffs' liability expert, the Director of Transportation Research Corporation, explained that "westbound 72W is controlled by two signal faces, a near-side over the right lane and a far-side over the left lane." Embedding a photograph in his report, the expert found "[i]t . . . evident from the photo . . . that the near-side signal face over the right lane is positioned in extremely close proximity (less than 10 feet) to the stop line." The expert concluded that as a "consequence of this close proximity of the signal head to the stop line . . . drivers lose sight of the overhead signal as they approach the intersection." There is no indication in the expert's report that he considered Clyde Neil's statement about how the accident occurred.

Based on materials obtained from the New Jersey Department of Transportation, plaintiffs' expert determined that with respect to "the signalization at the subject intersection[,] . . . the yellow change interval was

[four]-seconds and that there was a [two]-second all red interval." The expert also reviewed a database of accident reports concerning the intersection. He noted that since July 2007, there had been fourteen accidents involving vehicles westbound on Route 72 and vehicles northbound on Barnegat Avenue, the majority of which involved vehicles travelling in the right westbound lane of Route 72 West. He concluded:

> As documented in the reviewed accident report database, the behaviors of right-lane westbound Route 72W drivers are consistent with their losing sight of the overhead signal as they approach the intersection i.e., failing to see the signal turn from yellow to red at a sufficient distance from the signal to come to a safe stop. An explanation of this behavior is that the improper placement of the right-hand lane traffic signal (insufficient distance beyond the stop line) reasonably causes drivers to lose sight of the signal face sooner than had the signal been properly positioned.

The expert noted the Manual of Uniform Traffic Control Devices (MUTCD), adopted by the State, contains "a mandatory requirement that no signal face be positioned less than 40 feet beyond the stop line." The MUTCD also includes "a guidance requirement that 'if a signal face controls a specific lane or lanes of an approach, its position should make it readily visible to road users making that movement.'"

6

The parties presented conflicting evidence as to whether the painted stop line for westbound Route 72 West traffic was in the same location as depicted in a 1967 New Jersey Department of Transportation (NJDOT) "as-built" drawing. They also presented conflicting evidence as to whether the distance from the stop line to the traffic signal face was the same in the as-built and at the time of the accident.

A DOT engineer certified in a conclusory statement his "measurements revealed that distance between the painted stop line and near side traffic pole structure on Route 72 west . . . is in the same location as depicted in the NJDOT As-Built plan dated February 21, 1967." Based on aerial photographs, plaintiffs' expert found it "clear that the placement of the stop bar and traffic light shown in the aerial photographs do not match the dimensions shown on the As-Built drawing." A Professional Land Surveyor retained by plaintiff reviewed the as-built plan and then "personally took measurements of the intersection." The surveyor found it "clear that the distance between the stop line and the signal face do not match the dimensions and specifications shown on the As-Built drawing." Specifically, the distance between the stop line and signal face depicted on the NJDOT as-built plan is approximately four feet. The surveyor's field measurements revealed the distance to be 13.3 feet.

7

Based on the parties' submissions and arguments, the trial court granted summary judgment to the State. The court determined, among other findings, the State was entitled to design immunity, N.J.S.A. 59:4-6. The court also determined plaintiff had not established that the intersection was in a dangerous condition or that the distance between the stop line and traffic signal for Route 72 West traffic was the proximate cause of the accident. This appeal followed.

On appeal, plaintiffs argue that genuinely disputed issues of material fact precluded summary judgment. They contend they made a prima facie case "of dangerous condition liability under N.J.S.A. 59:4-2" and the State failed to meet its burden of proving it was entitled to plan or design immunity. They also argue that the grant of summary judgment to the State was premature because the State had failed to provide certain discovery.

Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). Our function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)); accord R. 4:46-2(c). A trial court's determination that a party is entitled

to summary judgment as a matter of law is not entitled to any special deference and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016). "Only when the evidence is so one-sided that one party must prevail as a matter of law should a court enter summary judgment." Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J 236, 257 (2018) (internal quotations omitted).

Plaintiffs alleged Lisa Hattrich was injured as the result of a dangerous condition of public property. The New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, establishes liability for a dangerous condition of public property in N.J.S.A. 59:4-2, which provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

A-2716-17T2

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

Thus, two elements a plaintiff must prove to establish a public entity's liability for a dangerous condition of its property are "the existence of a 'dangerous condition'" and "the condition proximately caused the injury." Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001).

Here, to satisfy their burden of demonstrating a triable issue existed as to proximate cause, plaintiffs proffered the opinion of their expert. He opined that the insufficient distance between the Route 72 West stop line and the traffic signal — which would cause drivers to lose sight of the traffic signal and fail to see the signal turn from yellow to red at a sufficient distance from the signal to come to a safe stop — was a "significant contributory and causal factor of the accident." However, "[a] party's burden of proof on an element of a claim may not be satisfied by an expert opinion that is unsupported by the factual record or by an expert's speculation that contradicts that record." Townsend v. Pierre, 221 N.J. 36, 55 (2015). Plaintiffs' expert opinion on causation was unsupported by the record and based on nothing more than speculation.

A-2716-17T2

Townsend, too, involved an intersectional collision. The tortfeasor, who was northbound, intended to make a left turn to proceed west on the intersecting street. Id. at 44. When she stopped at a stop sign for northbound traffic, her view was obstructed by overgrown shrubbery on the property on the intersection's southwest corner. Ibid. She testified at her deposition she edged up far enough to see approaching traffic in the eastbound lane of the intersecting street. Id. at 44-45. Her passenger corroborated her testimony. Id. at 45. As she began her left turn, she collided with an eastbound motorcycle, whose driver died as the result of injuries sustained in the accident. Ibid.

In opposing the property owner's summary judgment motion, the motorcyclist's estate presented the testimony of an expert. Id. at 46. The expert opined that "'[t]he restricted substandard and unsafe intersection sight distance was a significant contributing cause' of the accident." Id. at 48 [alteration in original]. The expert considered and rejected the tortfeasor's testimony that her view was not blocked by the shrubbery. Ibid. The expert believed that "given [the tortfeasor's] testimony that the bushes obstructed her view of eastbound traffic . . . , and given that she never saw the approaching motorcycle, I reasonably conclude that she did not have an unobstructed view of [eastbound traffic] when she proceeded into the roadway." Ibid.

11

The Supreme Court found the expert's opinion that the shrubbery obstructed the tortfeasor's view of approaching traffic to be not only unsupported, but contradicted by the facts in the record, and thus a net opinion on the element of proximate cause. Id. at 57. The Court noted the expert's opinion on causation "diverged from the evidence." Ibid. The Court explained that the expert "did not apply his engineering expertise to present empirical evidence undermining [the tortfeasor's] undisputed and corroborated testimony that when she turned left, her view of [eastbound] traffic . . . was unimpeded." Ibid.

The Supreme Court found significant the expert "took no measurements to demonstrate the line of vision of a driver located at the point at which [the tortfeasor] recalled making her left turn." Ibid. The Court emphasized the expert's opinion did "not suggest that at the location identified by [the tortfeasor] as the point at which she turned, the shrubbery was capable of blocking a driver's view of oncoming traffic." Ibid.

We find Townsend controlling. Here, plaintiffs' expert did not appear to consider Clyde Neil's statement that he observed the traffic signal turn to yellow. The expert took no measurements to determine at what point a driver on Route 72 West would lose sight of the traffic signal. And though he knew the speed

limit was forty miles per hour, the expert made no effort to calculate how far through the intersection a car would have traveled during the seconds that elapsed between the driver losing sight of the yellow traffic signal and the signal turning green for Barnegat Avenue traffic. In short, the expert's opinion was based on nothing more than speculation. The net opinion was insufficient to create a triable issue as to proximate cause. Townsend, 221 N.J. at 55. For that reason, the trial court correctly determined the State was entitled to summary judgment.

Although the motion record contained genuinely disputed issues of material fact that precluded summary judgment on the State's plan or design immunity defense, the issue is moot in light of our conclusion concerning plaintiffs' failure to establish a triable issue on the element of proximate cause. Plaintiffs' argument concerning discovery is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2716-17T2