**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3827-16T1

PETE STILIANESSIS,

    Plaintiff-Appellant,

v.

DR. PAUL DIONNE,

    Defendant-Respondent.

_____

        Argued October 23, 2018 – Decided  November 14, 2018

        Before Judges Fisher and Hoffman.

        On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-4510-14.

        Alan S. Pralgever argued the cause for appellant (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Alan S. Pralgever, of counsel and on the brief; Gary L. Koenigsberg, on the brief).

        Jeffrey A. Krompier argued the cause for respondent (Krompier & Tamn, LLC, attorneys; Jeffrey A. Krompier, of counsel and on the brief; Valerie N. Smaldone, on the brief).

PER CURIAM

In this civil action, plaintiff Pete Stilianessis claims he suffered permanent neurological damage resulting from negligent procedures utilized by his former dentist, defendant Paul Dionne. After discovery, the trial judge barred plaintiff's dental and neurological experts from testifying because, in the judge's view, they offered only net opinions. With the same stroke of the pen, the trial judge granted summary judgment dismissing the complaint. And, later, the judge denied plaintiff's reconsideration motion. Plaintiff contends all these rulings were erroneous. We agree and reverse.

Because summary judgment was granted, we consider the facts in the light most favorable to plaintiff, the motion's opponent. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Plaintiff claims his injuries resulted from a dental procedure that included three injections. Defendant acknowledged at his deposition that he did in fact inject plaintiff twice with Mepivacaine and once with Septocaine.[1] Plaintiff's treating dentist and liability expert, Dominick

_____

[1] At his deposition, defendant testified that he

> was testing the surface to see before I started drilling, which I always do. He wasn't – he was still feeling sensitivity on the root surface. So I gave him [one] carpule, waited a while, gave him another carpule of Mepivacaine and then waited a while, scratched the surface and still needed – still was feeling the

A. Lembo, D.M.D., stated in his report that defendant deviated from the standard of care by using Septocaine for a mandibular block or posterior superior alveolar (PSA).[2] To support his assumption that "a mandibular block was done here," Dr. Lembo testified at his deposition that he reached this conclusion from the available evidence:

> A. I can only, from the notes, make the conclusion on my end, a posterior superior alveolar. I can't make a clear – I have to admit, I can't make a clear mandibular block, but from the patient's description.
>
> Q. Did the patient use the words or the term mandibular block, or did you understand what he meant, and then you used the dental terms?
>
> A. I would say he described the physical action of the injection, which was definitely commensurate with a mandibular block.
>
> Q. Okay. So although you saw no reference [in the defendant's notes] by name or initials or shorthand, or however you want to describe it, to a mandibular block, the way the plaintiff explained this to you, you thought a mandibular block was performed?
>
> A. Exactly.

---

> sensitivity on the root surface so I gave him the Septocaine.

[2] At times, the parties and the witnesses seem to use "mandibular block" and "PSA" interchangeably. Whether they represent the same essential thing, or not, the result that we reach here must be the same.

A-3827-16T1

Q. With the use of Septocaine?

A. I would say so, yes.

Q. But you saw no reference to it in any of the documents?

A. I have to say that that's the truth, right.

Despite Dr. Lembo's testimony that the facts warranted a conclusion that defendant performed a mandibular block or PSA, the defense argued – and the trial judge agreed – that Dr. Lembo provided only a net opinion because defendant's office notes did not definitively confirm that defendant performed a mandibular block or PSA; the notes referred to a "PA," which defendant claims is an x-ray. The judge accepted this argument and, while focusing solely on the content of the doctor's notes, he disregarded the other evidence that supported the contention that defendant performed an unwarranted mandibular block or PSA.

Defendant, of course, may argue that his notes do not provide support for or actually undermine the grounds upon which Dr. Lembo's opinions rest. But the point is that there are facts in the record – not only coming from plaintiff's testimony but defendant's as well – that support Dr. Lembo's assertion that a mandibular block or PSA was performed and that that treatment deviated from proper care. In ruling on defendant's motion to bar Dr. Lembo from testifying

4

as an expert, the trial judge was not free to find more persuasive defendant's version of the facts; defendant's notes – however they might be interpreted – do not trump all the other evidence. The judge was obligated to view <u>all</u> the evidence in the light most favorable to plaintiff and to determine whether there was evidence – disputed or not – that provided support for the expert's opinions. Application of these standards required denial of defendant's dispositive motion.

The judge also failed to account for the fact that Dr. Lembo's opinion was not entirely dependent on a PSA or mandibular block being performed. Dr. Lembo provided the following testimony at his deposition:

> Two carpules of Mepivacaine and then one of Septo[caine], even if it was an infiltration, that's a pretty massive amount of vasoconstrictor in one single area, that might, in my opinion, create the same kind of injury, <u>without being a PSA</u>, because of the massive amount of epinephrine in those three injections.
>
> [Emphasis added.]

He explained that "Mepivacaine is pretty powerful stuff" and, when "added with Septo[caine], I think <u>without it being a PSA</u>, you could still have some problems" (emphasis added). And while Dr. Lembo capped that last comment with "I'm making a reach there," he emphasized that this "reach" was "educated."

A net opinion consists of nothing more than "bare conclusions, unsupported by factual evidence." <u>Buckelew v. Grossbard</u>, 87 N.J. 512, 524

5

(1981); see also Townsend v. Pierre, 221 N.J. 36, 50 (2015). Dr. Lembo's opinions have factual support: the deposition testimony of both plaintiff and defendant. He was entitled to interpret the parties' descriptions of the dental procedure to support his conclusion that, contrary to accepted dental practices, defendant performed a mandibular block or PSA. Far from recognizing this, the judge relied solely on defendant's office notes, which arguably suggest a PSA was not performed.[3] That contention may ultimately win the day, but that is for the jury to decide, not the judge by way of a procedural motion. Defendant may continue to contend that the PA in the office notes does not reference a PSA but an x-ray; that, however, remains to be seen. Notwithstanding the dispute about the meaning of the notes, everything plaintiff said about the treatment and, indeed, Dr. Lembo's own understanding of defendant's clear testimony as to what was injected and how often, provides factual support for Dr. Lembo's opinion that a PSA was performed and that it constituted a deviation from the

---

[3] The judge's opinion was handwritten at the bottom of his order. He there described his determination that Dr. Lembo provided a net opinion by concluding only that the report was based on what he characterized as Dr. Lembo's "misinterpretation of the office notes of defendant" that Dr. Lembo also, in the judge's words, failed "to resurrect . . . through his deposition testimony." The judge did not explain further his ruling. As we have demonstrated, defendant's office notes are not the alpha and omega here; there were other sources of factual information upon which Dr. Lembo could rely, including the deposition testimony of defendant himself.

A-3827-16T1

standard of care. The judge erred by exalting the importance of the doctor's note over all else, particularly when ruling on either the application to bar Dr. Lembo's testimony or in awarding summary judgment. What defendant actually did in treating plaintiff is ultimately for a jury to decide.

In concluding that plaintiff's neurological expert could not testify, the judge again misapplied the net-opinion standard. Dr. Nabil M. Yazgi provided a report which asserted that plaintiff's neurological problems were directly related to the dental treatment described in the depositions. And, although at his deposition he did not provide the precise means of the damage – testifying at his deposition that the injury was caused by "mechanical," "chemical," or "ischemic" means – he explained that the needle itself or the drug itself could have caused the injury and that the facts did not yet permit a clear conclusion about which means actually generated plaintiff's injuries. Defendant argued, and again the judge agreed, that this was fatal. This, however, is no different than the example of an expert permissibly testifying about a fatal gunshot that perforated multiple organs. In that circumstance, the expert might not be able to definitively conclude whether the victim died from the bullet's perforation of the heart or the liver, but our evidence rules impose no such obligation. See generally Creanga v. Jardal, 185 N.J. 345, 355-58 (2005). Dr. Yazgi's opinion

in these circumstances – prefaced with his conclusion that the three potential means of injury were all based, in reasonable probability, on the dental procedure – was enough to bar the judge from labeling it a net opinion.

Because we conclude that the judge erred in barring both Dr. Lembo and Dr. Yazgi from providing to the jury their expert opinions, it follows like day follows night that summary judgment was also precluded.[4]

The orders under review are reversed and the matter is remanded for trial. We do not retain jurisdiction.[5]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] The judge provided no separate basis for summary judgment; he merely assumed that, without these experts, plaintiff no longer had a viable claim.

[5] Our disposition makes unnecessary any consideration of plaintiff's arguments that defendant's summary judgment motion was filed too close in time to the scheduled trial date to be heard, or that the trial judge erred in ruling on the summary judgment motion without hearing oral argument.

A-3827-16T1