**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0703-18T3

THE ESTATE OF WILLIAM
MANOTOA, DECEASED, by
BLANCA RIOS, as Administrator
Ad Prosequendum, and BLANCA
RIOS, individually,

     Plaintiff-Appellant,

v.

ROBERT RUGGERIO,

     Defendant-Respondent,

and

THE WESTWOOD, and GEICO
INSURANCE COMPANY,

     Defendants,

and

ROBERT RUGGERIO,

     Defendant/Third Party
     Plaintiff-Respondent,

v.

RICKS WINES AND LIQUORS,

    Third-Party Defendant.

_____

Argued October 22, 2019 – Decided November 21, 2019

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3265-17.

Hector I. Rodriguez argued the cause for appellant (Law Offices of Hector I. Rodriguez, attorneys; Hector I. Rodriguez, on the brief).

Robert D. Kretzer argued the cause for respondent (Lamb Kretzer, LLC, attorneys; Robert D. Kretzer, on the brief).

PER CURIAM

On the evening of December 11, 2015, William Manotoa (decedent) sustained fatal injuries when he was struck by a vehicle driven by defendant Robert Ruggiero, as he attempted to cross a roadway on foot. In this appeal, plaintiff Blanca Rios, decedent's wife, challenges Law Division orders that dismissed her complaint asserting wrongful death and survival claims against defendant and denied reconsideration. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm the summary judgment dismissal of plaintiff's complaint.

I.

On December 11, 2015, decedent attended a party hosted by his employer at a restaurant in Garwood. Each attendee to the party received two tickets to exchange for one drink each. Prior to attending the party, decedent stopped at a liquor store and purchased nearly seventy dollars worth of alcohol.

The decedent left the work party at an unknown time, and was involved in a two-vehicle car accident in Westfield; according to the police report, the accident occurred at 4:56 p.m. The decedent was the driver of his vehicle and received a summons for improper passing. The police report contains no indication that defendant was impaired or smelled of alcohol. Decedent's actions for the following three hours remain unknown.

At approximately 8:00 p.m. that night, defendant was driving south on Springfield Avenue in Cranford. As defendant approached the intersection with Pawnee Road, his vehicle struck decedent as he attempted to cross Springfield Avenue on foot. The resulting impact launched decedent forty-five feet. The speed limit for the street was thirty-five miles per hour.

According to the police report of the accident, the impact occurred at the front passenger side of defendant's vehicle, denting the vehicle's hood and A-pillar, cracking the windshield, breaking the front parking lamp, and removing

the side mirror. A bystander attempted CPR until emergency personnel arrived. Emergency responders noted a strong odor of alcohol emanating from decedent.

The police located decedent's vehicle on Pawnee Road, "a short distance away with open containers of alcohol inside." They observed fresh damage to the vehicle, consistent with decedent's accident three hours earlier; in addition, they observed "fresh urine on the exterior of the vehicle."

Decedent was transported to a nearby hospital, where he was pronounced dead at 9:04 p.m. His injuries included multiple skull fractures, disconnection of the brain stem, lacerated kidney and liver, multiple rib fractures, and a compound fracture to the right leg. Decedent's blood alcohol content (BAC) was .258.

When questioned by police as to how fast he was traveling at the time of the crash, defendant responded, "Maybe 30 or 40 MPH. I was keeping up with traffic on the roadway at the time." Defendant stated he did not see the decedent prior to the accident, explaining, "He walked right into the front of my car." The police investigation did not indicate any fault on the part of defendant; instead, the report concluded that decedent was "accidentally . . . struck by a motor vehicle . . . while under the influence of alcohol."

II.

A-0703-18T3

A.

Plaintiff argues that the trial court abused its discretion in rejecting the report of George H. Meinschein, P.E., her liability expert, as a "net opinion." She contends that Meinschein "had a vast amount of information [on] which to base his conclusions," including his "education, training, experience in addition to the discovery documents and technical papers reviewed." Defendant in turn posits that Meinschein's report constitutes an inadmissible net opinion because it "reflects opinions unsubstantiated by any evidence." In addition, the report does not acknowledge or address the statement defendant gave to the police two hours after the accident nor the evidence of decedent's intoxication. The report also conflicts with the opinions reached by Detective William Pietrucha,[1] who investigated the accident for the Cranford Police Department.

We review a ruling on summary judgment de novo, applying the same standard governing the trial court. Davis v. Brickman Landscaping, Ltd., 219

---

[1] In addition to twenty-two years of experience, Detective Pietrucha has received special training in crash investigation and accident reconstruction. According to Detective Pietrucha, defendant told him "that the pedestrian walked into the side of his vehicle. Based on the damage and the injuries, that was what I concluded as well." In support of this conclusion, Detective Pietrucha identified a "photo indicat[ing] . . . scrapes that run across the passenger[-]side mirror, which are also consistent and in line with scrapes that run along the passenger front quarter panel."

A-0703-18T3

N.J. 395, 405 (2014) (citations and internal quotation marks omitted).  Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Id. at 406 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'"  DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted).  We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"[A] trial court confronted with an evidence determination precedent to ruling on a summary judgment motion squarely must address the evidence decision first[.]"  Konop v. Rosen, 425 N.J. Super. 391, 402 (App. Div. 2012) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010)).  "Appellate review of the trial court's decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court."  Townsend v. Pierre, 221 N.J. 36, 53 (2015) (citing Hanges, 202 N.J. at 385).

6

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend, 221 N.J. at 52 (citations omitted). As such, we accord deference to the trial court's grant of a motion to strike expert testimony, "reviewing it against an abuse of discretion standard." Id. at 52-53 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)).

Expert testimony is admissible in the following circumstances:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that such an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [DeHanes v. Rothman, 158 N.J. 90, 100 (1999) (quoting State v. Kelly, 97 N.J. 178, 208 (1984)); see also Agha v. Feiner, 198 N.J. 50, 53 (2009).]

Our analysis is also framed by N.J.R.E. 702 and N.J.R.E. 703. The former establishes when expert testimony is permissible and requires the expert be qualified in his or her respective field. The latter mandates that any expert opinion "be grounded in 'facts or data derived from (1) the expert's personal observations, [] (2) evidence admitted at the trial, or (3) data relied upon by the

A-0703-18T3

expert which is not necessarily admissible . . . but which is the type of data normally relied upon by experts.'" Townsend, 221 N.J. at 53 (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)).

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (quoting Polzo, 196 N.J. at 583); accord Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 300 (App. Div. 1990) (barring expert testimony "based merely on unfounded speculation and unquantified possibilities."). Therefore, an expert is required to "give the why and wherefore' that supports the opinion, 'rather than a mere conclusion." Townsend, 221 N.J. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). The net opinion rule directs experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both . . . are reliable." Id. at 55 (citation omitted). In short, the rule invokes "a prohibition against speculative testimony." Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997). This results because a speculating expert "ceases to be an aid to the trier of fact and becomes nothing more than an additional juror[,]" Jimenez v. GNOC, Corp., 286 N.J.

Super. 533, 540 (App. Div. 1996), affording no benefit to the fact finder. See N.J.R.E. 702.

In his June 29, 2019 report, Meinschein concluded, based on his review of the photographs taken by the Cranford Police, that the decedent "was struck by the front of [defendant's vehicle]." Meinschein further opined that defendant:

- [S]hould have been able to avoid striking [decedent] if he had been driving at the speed of 35 [m]iles per hour or less and doing so in a safe manner;

- [W]as either driving in an unsafe manner and/or driving a vehicle with deficient headlamps; and

- If the . . . headlamps (on defendant's vehicle) were operating properly and [defendant] was not distracted as he approached [the decedent], [defendant's vehicle] struck [the decedent] because [defendant] was traveling to the right of the vehicles that he was following, his view ahead was obstructed by the leading vehicles, and he was following the lead vehicles too closely for the speed of his vehicle.

Meinschein's opinion that defendant "was either driving in an unsafe manner and/or driving a vehicle with deficient headlamps" is speculative and lacks competent support in the record. Meinschein's report does not identify any of the 132 photographs as supporting his opinion, nor does he explain how any of the photos led to his conclusion.

Meinschein's report then states that the "available lighting [on the roadway] should have been sufficient to illuminate [decedent] in the roadway and allow [defendant] to avoid striking him if he had been driving at a speed of 35 mph or less and doing so in a safe manner." It appears Meinschein came to this conclusion simply based on the fact that the police report stated the street light at the intersection was on and defendant's statement that the roadway lighting was "pretty good." There was no independent evaluation or assessment of the brightness of the street lamp or the headlights of vehicles similar to that driven by defendant. Meinschein provides no explanation as to how he determined the lighting was "sufficient." Nor does he discuss reaction time or stopping time by a driver under the circumstances. He does not address the testimony by the defendant that he was driving as slow as thirty miles per hour. The essence of Meinschein's opinion is that the area was lit so defendant should have seen the decedent in time to stop.

Meinschein's report also contains a wholly unsupported opinion that "distracted driving" potentially played a role in the accident. It also contains an unsupported assertion that defendant followed the vehicles in front of him too closely. However, the record lacks any evidence to support these assertions.

Meinschein's opinion that defendant must have been distracted is speculative and similarly lacks competent support in the record. Defendant

10

exhibited no signs of impairment and was not on his cell phone or otherwise distracted.

We acknowledge that an expert's proposed testimony should not be excluded merely "because it fails to account for some particular condition or fact which the adversary considers relevant." Townsend, 221 N.J. at 54 (quoting Creanga v. Jardal, 185 N.J. 345, 360 (2005)). Nonetheless, "[a] party's burden of proof on an element of a claim may not be satisfied by an expert opinion that is unsupported by the factual record or by an expert's speculation that contradicts that record." Id. at 55. As in Townsend, "[t]his case presents such a setting." Id. at 60.

We conclude the trial court properly rejected Meinschein's expert report as it was highly speculative and omitted or ignored critical, undisputed facts. We share the trial court's conclusion that Meinschein rendered a net opinion and that plaintiff failed to establish a prima facie case of negligence against defendant. The mere happening of the accident did not establish defendant's negligence, see Long v. Landy, 35 N.J. 44, 54 (1961), and Meinschein's opinion that defendant must have been distracted is pure speculation.

B.

11

Even without reference to Meinschein's report, plaintiff argues that several material issues of fact existed to preclude summary judgment. We disagree.

First, plaintiff relies on defendant's statement to police that he was traveling "Maybe 30 or 40 MPH. I was keeping up with the traffic on the roadway at that time." According to plaintiff, because the speed limit was only thirty-five miles per hour, defendant could have been speeding. Plaintiff then argues that if a jury determines plaintiff was traveling above the speed limit, that fact would establish negligence per se. Plaintiff's brief fails to cite any supporting authority for this negligence per se argument.

Rather than negligence per se, at most, the evidence in that case suggests that defendant may have been speeding, given his uncertainty of his speed when the accident occurred. "The motor vehicle statutes establish standards of conduct for motorists on our highways and, under usual circumstances, the violation of motor vehicle statutes is evidence of negligence." Paiva v. Pfeiffer, 229 N.J. Super. 276, 280 (App. Div. 1988).

However, plaintiff presented no evidence of defendant's rate of travel other than defendant's uncertain statement to police. Notwithstanding the abundant evidence that resulted from the extensive police investigation of this

fatal accident, which would have given a competent expert a basis for providing an opinion as to defendant's speed, if in fact he had been speeding, plaintiff submitted no expert opinion to support her speeding claim. Because plaintiff retains the burden of persuasion in a negligence action, there are not sufficient facts for a rational factfinder to determine, by a preponderance of the evidence, that defendant exceeded the speed limit. As our Supreme Court has stated, "While proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant." Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 141 (1951) (quoting Callahan v. National Lead Co., 4 N.J. 150, 154 (1950); Woschenko v. C. Schmidt & Sons, 2 N.J. 269, 277 (1949); McCombe v. Public Service Railway Co., 95 N.J.L. 187, 189 (E. & A. 1920)).

Plaintiff next suggests the point of impact represents a material fact. Defendant stated to police that decedent "came into the passenger side of my car." Conversely, plaintiff cites Meinschein's report to argue the impact occurred with decedent in front of the vehicle. Thus, plaintiff argues a material issue of fact exists as to where the impact occurred. However, plaintiff cannot rely upon the properly rejected net opinion of her expert to create this dispute. In addition, plaintiff fails to demonstrate how the point of impact relates to the

A-0703-18T3

issue of negligence. Thus, the issue cannot be considered material, and therefore cannot preclude summary judgment.

We conclude plaintiff's complaint against defendant was properly dismissed. Any arguments not specifically addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION