**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5521-17T3

JOANN WEAN,

 Plaintiff-Appellant,

v.

U.S. HOME CORPORATION,
d/b/a LENNAR CORPORATION,

 Defendant/Third-Party
 Plaintiff-Respondent,

and

GREENBRIAR FALLS ASSOCIATION,
TAYLOR MANAGEMENT COMPANY,
INC., TOWNE & COUNTRY
MANAGEMENT CORPORATION,
and INTEGRA MANAGEMENT
CORPORATION,

 Defendants,

v.

ALCOA CONCRETE CONSTRUCTION
CO., INC., DUFEK & MIGLIARO
PLUMBING, INC., MENSER HEATING
& AIR CONDITIONING, INC., and

STROBER ORGANIZATION, INC.,

    Third-Party Defendants.

Argued December 10, 2019 – Decided March 6, 2020

Before Judges Accurso, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1825-14.

Frank J. Kontely, III, argued the cause for appellant (Hogland Longo Moran Dunst & Doukas, attorneys; Frank John Kontely, III and Jason R. Gosnell, of counsel and on the briefs).

William J. O'Kane, Jr., argued the cause for respondent (Archer & Greiner PC, attorneys; William J. O'Kane, Jr., on the brief).

PER CURIAM

In this negligent construction matter, plaintiff Joann Wean appeals the Law Division's order dismissing her claims against defendant, U.S. Home Corporation d/b/a Lennar, on summary judgment. Plaintiff sued defendant, alleging she sustained personal injuries and property damage when water infiltration caused mold to develop in the townhouse that defendant built and

sold to her.[1]  Plaintiff claims the motion judge erroneously concluded her construction expert failed to causally relate the presence of mold in her home to moisture and water infiltration caused by defendant's negligence.  In the alternative, plaintiff argues the judge failed to conduct a hearing pursuant to N.J.R.E. 104(a) to permit her expert to testify about the methodologies supporting his opinion.  Plaintiff also appeals another judge's earlier decision striking plaintiff's jury demand under the terms of the parties' purchase agreement.  We affirm the motion judge's decision on summary judgment, thereby rendering moot plaintiff's jury waiver claim.

## I.

Viewed in the light most favorable to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), the pertinent facts are as follows.

Plaintiff purchased her townhouse in late December 2006.  Prior to closing title, plaintiff noticed a leak in the basement, which caused water damage in two rooms.  Defendant purportedly repaired the leak and plaintiff closed title.  Within days of the closing, plaintiff discovered a second leak in the basement; defendant attempted to make repairs; but plaintiff noticed a third leak the

---

[1]  Plaintiff's complaint also named her development's homeowners association and management companies, all of which were dismissed on summary judgment and are not parties to this appeal.

following day. Defendant retained a waterproofing company to repair the third leak, but five days later, plaintiff discovered a fourth leak. Defendant allegedly remediated that leak but six months later, plaintiff noticed a fifth leak in the basement. Defendant again attempted to make repairs.

A few weeks before plaintiff discovered the fifth leak, her dishwasher leaked, causing water seepage "into the kitchen's wood floors and sub floor and . . . into a section of the finished basement." Plaintiff had the affected areas repaired. Shortly thereafter in July 2007, plaintiff retained Steve Levy, a mold specialist, to inspect and test the remediated areas. Levy's tests indicated the fungal ecology was within the normal range except for "the surface sample taken along the basement sill base plate." That sample contained an unidentifiable "light growth of a colorless spore type."

It is undisputed there was no evidence of elevated mold levels in plaintiff's home when plaintiff's "rapidly progressive pulmonary deterioration" began in October 2011. Plaintiff had been diagnosed with interstitial lung disease (ILD) in 2002, but her expert in mold-related illnesses ruled out ILD as the cause of plaintiff's illness. Notably, plaintiff smoked cigarettes for more than forty years until 2011.

4

In July 2012, Levy detected a species of mold in plaintiff's HVAC room, which was located in the basement. The following month, plaintiff engaged a contractor to remediate the mold. The foreman was deposed and testified that during demolition of the basement, he observed mold on eighty to ninety percent of the interior drywall. Remediation did not include changes to the building envelope, basement windows, walls or slabs. It is undisputed that the building envelope at plaintiff's townhouse never leaked or contributed to the presence of any mold in her residence after August 2012.

According to Levy's August 28, 2012 mold report, the basement area had returned to a "normal indoor fungal ecology." The parties disputed the source of the mold, but agreed that by this time plaintiff's HVAC unit had also leaked. When deposed, Levy confirmed he tested plaintiff's basement "on numerous occasions after August 28th, 2012, over the course of several years." The results of those tests yielded "normal fungal ecology" with "no recurring issues with respect to moisture problems in the basement contributing towards mold growth."

During discovery, plaintiff's construction expert, Herbert Cannon, AIA, issued two reports. In his first report, Cannon concluded: "The initial water intrusion, at multiple locations, was a direct result of faulty construction by

5

[defendant] of the roof, exterior walls, and basement[,] which directly caused the growth of mold." In his second report, Cannon elaborated:

> Taking into account the timeline and the list of documents, there is no question that leaks and moisture infiltrations occurred at various locations and at various times and that the attempted repeated repairs of [defendant], the [a]ssociation and the [m]anagement [c]ompanies failed to mitigate the problems. The repeated leaks and moisture infiltrations directly caused the repeated infestation of mold that resulted in the medical problems of [plaintiff].

When deposed, however, Cannon could not opine "that any specific water infiltration event contributed to any specific mold growth in [plaintiff]'s house," stating he had not seen "any documentation to that effect." Cannon repeated that response when specifically questioned about plaintiff's basement, attic, and roof. Cannon also conceded he could not opine "that any construction defect [he] found within [plaintiff's] residence caused any specific mold growth within her home." Cannon elaborated:

> Again, not being an industrial hygienist, and I didn't read anything with a cause and effect, I know that there was water intrusion, attic and basement, and I know that there was mold found in the house, the best I can do is – you know, from my experience there's a cause and effect there, but saying this specifically caused this mold on this day or in this area, I can't say.

6

Cannon also acknowledged "mold is everywhere," engaging in the following colloquy with defendant's counsel:

QUESTION: So you could have a water event occur and it not produce any mold at all, correct?

ANSWER: That is correct.
QUESTION: And by the same token you could have mold without any water event, correct?

ANSWER: Yes, if you have a high humidity area . . . then you could get mold.

QUESTION: And you could also have inactive mold without a water event, correct?

ANSWER: Yes. Well, the inactive mold is there all the time, so that's without a water event.

. . . .

QUESTION: Okay. And with respect to the photographs you saw of [plaintiff's] attic, you don't know whether any mold in that attic was active or inactive, correct?

ANSWER: No. In fact, all the photographs of the attic that I've seen, I really didn't see anything that even remotely looked like mold, but they're so complicated, you know, and shadows, I don' really know what was going on up there.

Following the close of discovery, defendant moved for summary judgment, arguing plaintiff failed to demonstrate a "prima facie case of construction defect causing water infiltration that produced the mold" in

7

plaintiff's townhouse. To support its argument, defendant cited Cannon's deposition testimony, claiming the expert admitted he could not conclude there was "a cause and effect between any of those construction defects that he allege[d] in this case, and the water infiltration producing mold in this case." Plaintiff countered she was relying upon the collective opinions of Cannon, Levy, and her two medical experts to prove causation based upon a "cumulative theory of exposures." To support her theory, plaintiff cited the "factual observations of water infiltration in the home on [eleven] occasions, five in the basement, six in the attic" as observed by her family members and workers. Plaintiff did not, however, file a sworn statement by Cannon, clarifying his deposition testimony.

Following argument, the judge reserved decision and later issued the order under review accompanied by an oral decision. Noting defendant's motion was not based upon net opinion rendered by Cannon, but rather focused on plaintiff's failure to satisfy the proximate cause element of her negligence claim, the judge concluded "plaintiff failed to provide any credible evidence of a nexus between

[defendant]'s alleged construction defects and the presence of mold in the subject unit."[2]  This appeal followed.

II.

We review a trial court's grant of summary judgment de novo.  Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 414 (2016).  Employing the same standard as the trial court, Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016), we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff nonetheless entitle defendant to judgment as a matter of law, Brill, 142 N.J. at 540; R. 4:46-2(c).

The elements of a negligence cause of action are well-settled.  "To sustain a cause of action for negligence, a plaintiff must establish four elements:  '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'"  Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)).  A plaintiff bears the burden of proving negligence, which is never presumed.  Khan v. Singh, 200 N.J. 82, 91 (2009).

---

[2]  The motion judge did not reach the issue of medical causation.

"[T]he issue of a defendant's liability will not be presented to the jury simply because there is some evidence of negligence." Reynolds v. Gonzalez, 172 N.J. 266, 284 (2002). Rather, "'[t]here must be evidence or reasonable inferences therefrom showing a proximate causal relation between defendant's negligence' . . . and the resulting injury." Ibid. (quoting Germann v. Matriss, 55 N.J. 193, 205 (1970)). The Court has defined "proximate cause" as "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Townsend, 221 N.J. at 51 (citation omitted).

Although the motion judge cited that proximate cause definition here, plaintiff argues the judge utilized the wrong standard in finding she failed to prove causation. She contends the judge incorrectly required her to prove a "single cause" of her injury or harm when Cannon's reports demonstrate "various construction defects . . . were substantial factors in causing the mold in [plaintiff]'s home." Plaintiff's arguments are unavailing.

We have long recognized the standard for proximate cause depends upon the nature of the tortious conduct, distinguishing routine tort actions from those that involve concurrent causes of harm. See Camp v. Jiffy Lube No. 114, 309 N.J. Super. 305, 309 (App. Div. 1998). The routine tort case "requires proof

that the result complained of probably would not have occurred 'but for' the negligent conduct of the defendant." Ibid. (citations omitted). When concurrent causes of harm are alleged, "the law requires consideration of the 'substantial factor' test." Ibid. "The 'but for' standard concentrates on one cause that sets the other causes in motion, while the 'substantial factor' test recognizes that a tortfeasor will be held answerable if its negligent conduct was a substantial factor in bringing about the injuries, even where there are other intervening causes which were foreseeable or were normal incidents of the risk created." Id. at 309-310 (citation and internal quotation marks omitted). The concurrent acts "need not, of themselves, be capable of producing the injury; it is enough if they are a 'substantial factor' in bringing it about." Conklin v. Hannoch Weisman, 145 N.J. 395, 419-20 (1996) (citation omitted).

This is not a "complex case" in which defendant's alleged "negligent conduct combine[d] with other causes that led to" plaintiff's claimed damages. Model Jury Charges (Civil), 6.12, "Proximate Cause – Claim That Concurrent Causes of Harm Were Present" (approved May 1998) (citing Camp, 309 N.J. Super. at 309). Plaintiff has not alleged defendant's conduct combined with other causes to bring about her harm. Rather, she contends "the sum of the moisture intrusions from the sum of [defendant's] construction defects caused

the mold in [her] home[,]" and, as such, "the various construction defects set forth in [Cannon's] reports were substantial factors in causing the mold in [her] home."

To support her argument, plaintiff cites toxic tort cases involving asbestos exposure. Those cases, however, focus on the plaintiff's medical causation, i.e., whether the defendant's defective product was a substantial factor in causing the plaintiff's injuries. See, e.g., Grassis v. Johns-Manville Corp., 248 N.J. Super. 446, 457 (App. Div. 1991) (permitting the plaintiff, who alleged asbestos exposure caused his cancer to demonstrate the "defendant's conduct or defective product was a proximate cause of the condition, i.e., a substantial factor in bringing the condition about"); Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 26 (App. Div. 1989) (observing asbestos cases are approached "differently, primarily because asbestosis and resulting cancers are recognized as being the products of cumulative exposure").

Conversely, here the dispositive issue on summary judgment was not medical causation, i.e., whether mold caused plaintiff's injuries, but whether defendant's alleged defective construction caused water infiltration, which caused the presence of mold in plaintiff's residence. When deposed, plaintiff's construction expert, Cannon, testified he could not link any construction defects

or any water infiltration with the presence of mold in plaintiff's townhouse. We therefore discern no basis to disturb the motion judge's conclusion that plaintiff failed to "demonstrat[e] that any of the alleged construction defects by [defendant] proximately caused the mold."

### III.

We next consider plaintiff's argument that the motion judge "disregarded [her] invitation to hold a Rule 104(a) hearing to determine the admissibility of Mr. Cannon's testimony."[3] The decision whether to hold a Rule 104 hearing is within the sound discretion of the trial court. Kemp v. State, 174 N.J. 412, 432 (2002). In Kemp, the trial court granted summary judgment – without conducting a hearing – finding the opinion of the plaintiffs' expert was not sufficiently reliable under N.J.R.E. 702. Id. at 415, 423. The Supreme Court reversed, finding plain error in the trial court's refusal to conduct a hearing to determine the testimony's reliability. Id. at 432.

Kemp followed Rubanick v. Witco Chemical Corp., 125 N.J. 421, 593 (1991). In Rubanick, the Court stated that when a trial court is "faced with a not

---

[3] Plaintiff has not cited the place in the record where her request for a hearing was made, and the motion judge's decision does not reflect that request. Because defendant does not challenge plaintiff's representation, we consider plaintiff's argument on the merits.

yet generally accepted theory of causation," the court should conduct a "hearing to assess the soundness of the proffered methodology and the qualifications of the expert." Id. at 454. A "[p]laintiff's burden is to demonstrate that the methodology used by [the expert] . . . is consistent with sound scientific principles and methodologies accepted in the medical and scientific communities." Kemp, 174 N.J. at 431; see also In re Accutane Litigation, 234 N.J. 340, 381 (2018).

Unlike the defendants in Accutane, Kemp and Rubanick, here, defendant neither challenged the reliability of Cannon's conclusions under N.J.R.E. 702, nor otherwise contended his opinion was inadmissible. See also Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC, 450 N.J. Super. 1, 100 n.50 (App. Div. 2017) (observing that "ordinarily the best practice would be for a trial judge to permit the examination of the scope of an expert's opinion – when its admissibility is challenged – at a pretrial N.J.R.E. 104(a) hearing"). As the motion judge correctly recognized, defendant did not contend Cannon's opinion was net. Instead, defendant claimed Cannon failed to demonstrate any of defendant's alleged construction defects proximately caused the water infiltration in plaintiff's unit that, in turn, caused mold that, in turn, caused plaintiff's injury. Because plaintiff does not contend Cannon's link in the

proximate causation chain involved a unique causation theory, the concerns that prompted the Court in <u>Kemp</u> and <u>Rubanick</u> to remand for a hearing are not present here.

We also recognize a hearing would have been appropriate if the grounds for Cannon's opinion "were not sufficiently explained and the 'reasons and foundations for them inadequately and perhaps confusingly explicated.'" <u>Kemp</u>, 174 at 429 (citation omitted). In that regard, a Rule 104 hearing may have permitted Cannon "to identify the factual basis for his conclusion." <u>Id.</u> at 427. Notably, however, plaintiff did not file a sworn statement from Cannon explaining the deficiencies in his deposition testimony in response to defendant's motion. And before us, plaintiff has not identified any facts Cannon would explain at a hearing. <u>See Shelcusky v. Garjulio</u>, 172 N.J. 185, 201-02 (2002) (noting the utility of an affidavit "where the contradiction is reasonably explained, where an affidavit does not contradict patently and sharply the earlier deposition testimony, or where confusion or lack of clarity existed at the time of the deposition questioning and the affidavit reasonably clarifies the affiant's earlier statement").

Instead, quoting <u>Kemp</u>, 174 N.J. at 427, plaintiff asserts Cannon should be permitted "to opine as to his conclusions and methodologies so that the trial

court could determine whether his testimony was 'based on scientifically sound reasoning or unsubstantiated personal beliefs.'" That request seeks to explain methodologies that are not in issue. Because plaintiff did not identify any facts that would come to light in a hearing, or otherwise explain the contradiction between Cannon's unsworn reports and deposition testimony, we conclude a hearing was not necessary.

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-5521-17T3