**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2199-20

MARTHA PISABAJ FLORES,

    Plaintiff-Respondent,

v.

MOSES M. ALLIE,

    Defendant-Appellant.

_____

Argued December 7, 2021 – Decided February 7, 2022

Before Judges Fisher, Currier and Smith.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2544-17.

Jennifer A. Hindermann argued the cause for appellant (Cooper Maren Nitsberg Voss & DeCoursey, attorneys; Jennifer A. Hindermann, on the briefs).

Joel R. Rosenberg argued the cause for respondent (Stark & Stark, attorneys; Joel R. Rosenberg, of counsel and on the brief; Chinsu Shajan, on the brief).

PER CURIAM

Plaintiff alleges she sustained injuries when she was struck by defendant's vehicle as she crossed a street. Defendant produced an expert report from a biomechanical engineer. The trial court granted plaintiff's motion to strike the expert report as net opinion. We granted defendant leave to appeal. We now affirm the court's order in part, agreeing that all but one opinion was net opinion. We reverse the order as to the discrete opinion and remand for further proceedings.

I.

At the scene of the accident, Lawrence Township police officer Dylan P. McClister took statements from plaintiff, defendant, and two witnesses. He also inspected defendant's vehicle for damage and observed pieces of the vehicle's grille that were in the street. The parties, witnesses, and McClister were also deposed.

McClister noted on the police report that plaintiff stated she was "suddenly struck by an unknown vehicle" as she walked across Brunswick Pike. She was unable to give any description of the vehicle. Plaintiff alleged she fractured her hip and multiple ribs, and suffered bruising to her lung, as well as a ruptured disc in her spine, and other injuries.

A-2199-20

Defendant told the officer that he was traveling in the left lane of Brunswick Pike when he "saw [an individual] lying on the edge of the lane closest to the median." He said he "slammed on his brakes and stopped to see if [the person] was ok. He then pulled off to the shoulder to assist her." Eventually defendant told the officer, "I possibly may have touched her."

The first witness—Christopher Nowacki—told McClister, that after he heard a noise, he looked and "saw [plaintiff], rolling off [defendant's vehicle] and land on the ground." The second witness, Gloria Villa Delgado, told McClister she "witnessed the entire incident" and that defendant's vehicle "was traveling [northbound] on Brunswick Pike in the left lane, and struck [plaintiff] as she was crossing Brunswick Pike."

During McClister's investigation at the scene, he observed "minor damage" to the front of defendant's vehicle—a 2003 Nissan Xterra—including that part of the grille was missing. The officer found two pieces of the vehicle's front grille in the roadway where plaintiff was struck. McClister wrote in his report that the two pieces of the grille found in the road "fit consistently with each other" and the part of the grille remaining on the vehicle.

The officer concluded in his report that "[b]ased on the evidence located in the roadway, the independent witnesses['] statements, and damage to

3

[defendant's vehicle], [defendant's vehicle] was involved [in the accident] and did strike [plaintiff]." McClister also found plaintiff "at fault for the [accident]" for her failure to yield the right of way to defendant.

During his deposition, defendant reiterated he saw a woman lying in the street, he braked, and stopped to ask her if she was alright. When plaintiff did not respond, defendant stated he pulled over to help her. He denied ever striking plaintiff.

When the officers at the scene asked defendant about the damage to the front end of his car and the grille, he testified he told them there was prior damage to the grille area, incurred when he hit a deer earlier that same year. He said he did not repair the front of his vehicle after the accident with the deer, but instead fixed it himself "with string." In photographs taken at the scene of the accident, there are zip ties visible behind or under the damaged grille.

Plaintiff testified that she could not describe the vehicle that struck her. She could not remember if she fell "straight down" or if she was "thrown at all in the air."

Nowacki testified that he lived on the road where the accident occurred. He stated he was sitting in his vehicle parked in his driveway facing the road when he heard a noise. He described:

> I remember going into my vehicle and I have a dashboard cam and normally I prepare that to turn it on. So I was adjusting that and preparing to turn that on and I remember hearing an impact, which sounded like a vehicle impact. And I looked directly over and seen the traffic had stopped. And I kept glancing over there and within a few seconds I noticed there was a . . . body in the street . . . And glanced over, saw . . . all the vehicles had stopped and noted two vehicles in the slow lane and one vehicle in the fast lane. And the one vehicle in the fast lane was a yellow vehicle.[1]

After going into his house and telling his parents to call 9-1-1, Nowacki went to plaintiff to see if she was alright. She was laying on the median. Nowacki could not remember if he saw plaintiff rolling off the hood of defendant's car as he had told the police.

Delgado testified that she was walking on the sidewalk along Brunswick Pike when she noticed plaintiff crossing the street. She also saw a yellow car traveling in the left lane of Brunswick Pike approaching plaintiff. She heard a loud sound and when she turned her head, she saw plaintiff fall to the ground. Delgado said defendant kept going but then he braked and moved to the right lane and came back to the scene. She testified that defendant was travelling "past [twenty-five] miles" per hour but less than fifty miles per hour. Delgado

---

[1] The witnesses refer to a yellow car. In McClister's deposition he described defendant's Xterra as yellow.

A-2199-20

did not see defendant's vehicle strike plaintiff. She also stated she did not see plaintiff roll onto or off the hood of the yellow vehicle.

McClister's deposition testimony remained consistent with the information in his report.

II.

Defendant produced the report of David L. Gushue Ph.D., which described his credentials and experience in the biomechanical field. The expert advised he reviewed numerous documents in rendering his analysis and conclusion, including the police report; photographs; deposition transcripts; answers to interrogatories; legal pleadings; damage estimates pertaining to defendant's vehicle prior to the day of the accident; and data on a standard vehicle of the same year, make, and model of defendant's car.

In his biomechanical analysis and discussion, Dr. Gushue noted there were "differing descriptions of the subject incident as to whether [plaintiff] was contacted by an unidentified vehicle or [defendant's vehicle]." He informed that the purpose of his analysis was to "determine which version of events is more plausible within the context of the available evidence."

Dr. Gushue explained he used a "fault-tree analysis" to analyze the evidence. This scientific causation analysis begins with "an undesired top

A-2199-20

event;" here, there were two top events: a collision between defendant's car and plaintiff and the injuries sustained by plaintiff. The next step in the analysis is to identify the causes or contributing factors for the occurrence of those events. These causes are compared to the available evidence. Dr. Gushue stated that "[e]vents which are inconsistent with the conditions existing at the time of the subject incident are then discarded." This analysis continues "until independent events are reached or there is little reason to continue due to lack of information or insignificance of the contribution of additional breakdowns."

In his report, the expert described four scenarios regarding the accident. He then opined whether the scenario was plausible or implausible when viewed in light of the available evidence. The scenarios were based on the different descriptions of the events given by the parties and witnesses.

The first scenario, grounded in Nowacki's testimony, is that plaintiff rolled off the hood of defendant's vehicle. The expert concluded this scenario was not plausible and was inconsistent with the evidence because: (1) although Nowacki initially reported to the police that he saw plaintiff roll off the hood of the vehicle, he could not recall during his deposition whether that happened; (2) the photographs did not show any damage to the hood; and (3) in reviewing the dimensions of the front of the Nissan and plaintiff's height and weight, the expert

opined that if contact occurred, the "vehicle would have contacted her body above her center of mass, thereby causing her body to fall towards the ground and preventing her upper body from wrapping onto the hood of the vehicle."

The second scenario considered Delgado's deposition testimony that defendant was traveling between twenty-five and fifty miles per hour. The expert concluded this scenario was implausible because: (1) Delgado's testimony was inconsistent from her statements in the police report; (2) and plaintiff "was not diagnosed with injuries typically associated with high-energy trauma that would be consistent with vehicle speeds of [twenty-five to fifty] miles per hour."

Scenario three addressed the debris from the vehicle found at the scene, the damage seen on the vehicle at the scene, and damage the vehicle had incurred to the front end prior to this incident. Dr. Gushue opined that the only damage that might have occurred during the accident "would be limited to pieces of the previously-broken grille falling off into the roadway." He stated that "given the pre-existing damage, it is unknown as to whether the broken pieces fell off due to minor contact with [plaintiff] or due to heavy braking while [defendant] brought the vehicle to a stop after observing [plaintiff] lying in the roadway." He opined that McClister's conclusion that all of the damage was from the

A-2199-20

accident was based upon incomplete information regarding the pre-existing damage to the Nissan.

The last scenario was based on plaintiff's inability to identify the vehicle that struck her and her testimony that after it struck her, it backed up and drove away. Dr. Gushue concluded that a scenario in which an unidentified vehicle struck her and then fled the scene prior to defendant's arrival could not be ruled out.

Following the service of his report, Dr. Gushue was deposed for more than five hours. Plaintiff moved to bar the report and the expert's testimony, alleging it was net opinion. The trial court agreed and, under a June 24, 2020 order barred Dr. Gushue from testifying because the report was net opinion. The court denied a subsequent motion for reconsideration.

### III.

The exclusion or admission of an expert's testimony or report is "committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). On review, a trial court's grant or denial of a motion to bar expert testimony is entitled to deference. "[W]e apply [a] deferential approach to a trial court's decision to

admit expert testimony, reviewing it against an abuse of discretion standard."

Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

A.

On appeal, defendant contends his expert was qualified, and his opinions were supported "by generally accepted methods in the biochemical engineering field" and would assist a jury in understanding the various scenarios that might have occurred. Plaintiff does not challenge Dr. Gushue's qualifications to be considered an expert in the field of biomechanics but asserts instead that the expert testimony was properly barred because it is not based on factual evidence or scientific data, therefore rendering it inadmissible net opinion.

N.J.R.E. 703 states that an expert's opinion must be based in facts or data "perceived by or made known to the expert . . . ." The net opinion rule is a "mere restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, is inadmissible." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). An expert's opinion may be deemed a net opinion when the expert "does not demonstrate the soundness of a methodology, both in terms of its approach to reasoning and to its use of data . . . ." In re Accutane Litig., 234 N.J. 340, 400 (2018). An expert must "give the why and wherefore" that supports their opinion, "rather than a mere conclusion." Townsend, 221 N.J. at 54.

B.

In his oral decision, the motion judge stated he had "concerns" regarding the admissibility of the fault tree analysis, citing to a Maryland federal district court case—Shreve v. Sears, Roebuck & Co., 166 F. Supp. 2d 378 (D. Md. 2001).[2]

However, in Shreve, a products liability case regarding a snow blower, the court did not reject the fault tree analysis as an accepted scientific method but instead found the expert "did not perform an objective fault tree analysis as would a disinterested professional applying that analytical tool to discover how best to design a safe [product] after an injury-causing incident." Id. at 397.

The trial judge here did not bar the expert report because it used an unaccepted scientific method—specifically the fault tree analysis—but struck it instead because it was net opinion. Therefore, we need not address the general admissibility of an expert's use of the fault tree analysis. We need only review the report for net opinion issues.

---

[2] The fault tree scientific method analysis has not been considered in any New Jersey state court case.

## C.

The trial court found the report was an "impermissible net opinion," because Dr. Gushue's opinions "addresse[d] credibility issues, [and] encourage[d] the jury to speculate about theories with no foundational basis relative to this matter and bare conclusions which are unsupported by the factual evidence."

Except for one opinion, we agree that the expert's conclusions were primarily credibility determinations that rest within the province of the jury. See Rodriguez v. Wal-Mart Stores, Inc., 449 N.J. Super. 577, 590 (App. Div. 2017) (quoting State v. Vandeweaghe, 351 N.J. Super. 467, 481 (App. Div. 2002), rev'd on other grounds, 237 N.J. 36 (2019)) ("The courts of this state have long adhered to the cardinal principle that '[i]t is within the sole and exclusive province of the jury to determine the credibility of the testimony of a witness.'"). Therefore, we affirm the order barring the expert's opinions regarding scenarios two, three, and four.

Delgado can be cross-examined by counsel on her observations of the parties' actions and any inconsistencies in her testimony and statements. Dr. Gushue's conclusion regarding the speed of defendant's vehicle at the time of these events is not based on any mathematical calculations or other data analysis.

12

Similarly, McClister and defendant can testify and be subjected to cross-examination regarding the damage to defendant's vehicle. Like all witnesses, the issue of their credibility will be a determination for the jury. The conclusions reached by Dr. Gushue regarding the vehicle damage and debris were speculative and not based on any factual evidence.

However, Dr. Gushue's opinion discrediting Nowacki's testimony that plaintiff rolled off defendant's vehicle is supported by sufficient factual evidence and scientific data to permit its admission. Therefore, it was a mistaken abuse of discretion to bar this particular opinion.

### D.

We are not persuaded by defendant's assertion that the court erred when it declined to conduct a N.J.R.E. 104 hearing prior to barring the expert report. First, defendant did not request a hearing until the filing of the motion for reconsideration. Second, after five hours of deposing the expert regarding his opinions and conclusions in his eight-page report and given the reasons or lack of reasons for the opinions, it is doubtful an additional evidentiary hearing could shed any further light on the issue.

The decision to conduct a Rule 104 hearing rests within the sound discretion of the court. Kemp v. State, 174 N.J. 412, 432 (2002). We discern

13

no abuse of discretion in the trial judge's determination that there was no necessity for a hearing.

The trial court's order is reversed only as to the particular expert testimony and opinion as discussed above. The remainder of the expert report and testimony is barred as net opinion.

Affirmed in part, reversed in part, and remanded to the court for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2199-20